# UNITED STATES DISTRICT COURT

## District of the District of Columbia

| | | |
|---|---|---|
| Keith B. Diggs, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05-1112(EGS) |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL, | ) | January 6, 2006 |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

**I.      INTRODUCTION**

The Plaintiff alleges that he was discriminated against on the basis of race (black), sex (male), age (DOB 1956), retaliation (prior EEO activity) and physical disability (back injury) in the Report of Investigation (ROI) when:

On July 22, 1998, he became aware that sick leave was put in for him rather than LWOP which affected his CA-7 claim; and on August 19, 1998, he received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible, effective April 25, 1998, resulting in a change in his seniority status.

The Plaintiff alleges he was discriminated against based on retaliation (prior EEO activity) and physical disability (back injury) when:

On September 9, 1999, his request for sick leave was disapproved, changed to annual, causing him to incur three hours of leave without pay; and on an unspecified date, Injury Compensation Specialist provided inaccurate information on handling his claim that encouraged retaliatory responses from management.

The Plaintiff has launched an impermissible collateral attack on the workers compensation and the arbitration award processes and is unable to show that he is aggrieved.   Furthermore, the Plaintiff in his opposition is unable to show that he is disabled as defined by the Rehabilitation Act or to establish a prima facie case of discrimination based on sex, race, age, disability or retaliation.   Even if the Plaintiff could establish a prima facie case, he is unable to show that the Postal Service's legitimate, non-discriminatory reasons are pretextual.   For these reasons the motion for summary judgment should be granted.

## II.  ARGUMENT AND AUTHORITIES

### A.   <u>Summary Judgment Should Be Granted From The Administrative Record Without Discovery.</u>

Plaintiff has made no attempt to refute Defendant's showing that his Complaint should be dismissed for his failure to show any disputed material facts.   Plaintiff's only response to Defendant on these points was a suggestion that the Plaintiff would like to take discovery.   <u>See</u> Pltf.'s Opp., at p. 7. Specifically, Plaintiff relied on Rule 56(f) of the Federal Rules of Civil Procedure, which permits a court to deny a motion for summary judgment and order additional discovery if "the party opposing the motion . . . cannot . . . present by affidavit facts essential to justify the party's opposition . . . ." Fed. R. Civ. Pro. 56(f).  Here, however, Plaintiff has failed to make even the rudimentary showing required by Rule 56(f) of the Federal Rules of Civil Procedure that, without discovery, he is unable to "present by affidavit facts essential to justify [his] opposition [to summary judgment]." <u>See</u> Rule 56(f), Fed. R. Civ. P.; <u>See</u> <u>also</u> <u>First Chicago Int'l v. United</u>

Exchange Co., Ltd.,  836 F.2d 1375, 1380-81 (D.C. Cir. 1988); Blumenthal v. AOL, 992 F. Supp. 44, 53 n. 15 (D.D.C 1998); Novecon, Ltd. v. Bulgarian-American Enterprise Fund, 977 F. Supp. 52, 54 (D.D.C. 1997).

The meaning of Rule 56(f) is plain. It only permits discovery in aid of opposition to summary judgment "should [the need] appear from the affidavits of the party opposing the motion . . . ." Fed. R. Civ. Pro. 56(f). The Court of Appeals for the District of Columbia has read this language as an expectation that opposing counsel will file their objections under oath. See, e.g., Londrigan v. FBI, 670 F.2d 1164, 1175 (D.C. Cir. 1981) ("Counsel for Londrigan complied with the prerequisites for invocation of Rule 56(f) by submitting an affidavit to the District Court explaining why he was unable to offer material in opposition to the FBI's summary judgment motion."). The consequence of ignoring this "prerequisite" is typically severe:

> The rule will not be liberally applied to aid parties who have been lazy or dilatory. The most obvious indication of lack of diligence is a failure on the part of the non-movant to present affidavits under either subdivision (e) or (f).

10A Wright et al., Federal Practice and Procedure § 2740, at 535 (2d ed. 1983) (footnote omitted); See also Novecon Management Co. v. Bulgarian-American Enterprise Fund, 977 F. Supp. 52, 54 (D. D.C. 1997); Mid-South Grizzlies v. National Football League, 720 F.2d 772, 780 n.4 (3d Cir. 1983) (listing precedents).

Instead of submitting the appropriate affidavits in opposition the Plaintiff merely has made conclusory allegations that discovery would likely produce material disputed

facts.  Plaintiff sought discovery relating to his claims by merely stating he is not able to

present opposing facts to contradict Defendant's assertions because Plaintiff has not

been able to engage in any discovery.  See Pltf.'s Opp., p. 3.  This is plainly a

conclusionary assertion without supporting facts. "It is well settled that conclusory

allegations unsupported by factual data will not create a triable issue of fact." Exxon

Corp. v. FTC, 663 F.2d 120, 126-27 (D.C. Cir. 1980) (quotation omitted, alteration

original); cf. Rodriguez v. The National Center for Missing and Exploited Children, Civil

Action No. 03-120 (RWR), 2005 U. S. Dist. Lexis 5658 (2005); Contemporary Mission,

Inc. v. United States Postal Serv., 648 F.2d 97, 106-08 (2d Cir. 1981) (where plaintiff

sued the Postal Service and its officials for interference with constitutional rights, court

affirmed grant of summary judgment, without discovery, to defendants where plaintiff

merely "colored its complaint with conclusory allegations of a wide-ranging conspiracy

to deprive it of its constitutional right to due process and free exercise of religion"

and when required to furnish affidavits demonstrating existence of genuine issue of

material fact, "plaintiff responded by presenting immaterial factual inconsistencies and

by reiterating its conclusory allegations of conspiracy").  Likewise here, Plaintiff's

Complaint contains merely conclusory allegations that he was discriminated against

based on his alleged protected categories.

        Plaintiff also restated several allegations from his Complaint (See Pltf.'s Opp., p

12), but he did not offer a reasonable basis to suggest that discovery would show either

that Defendant made errors too obvious to be unintentional or that the stated reasons

for Defendant's actions were not believable. See Fishbach v. District of Columbia, Dept.

of Corrections, 86 F.3d 1180, 1182 (D.C. Cir. 1996) (to show pretext, issue is not

4

correctness of employer's reasons but whether it honestly believes them).  Even though Plaintiff suggested that Defendant's explanations were false, he failed to describe what new facts he believed could be obtained by discovery to support his theory. See Carpenter v. Federal National Mortgage Assn, 174 F.3d 231, 237 (D.C. Cir. 1999); Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (desire to "test" affiants' testimony does not justify Rule 56(f) discovery). Accordingly, the District Court will not abuse its discretion in denying Plaintiff's discovery request. See Exxon Corp., 663 F.2d at 126 (Rule 56(f) ruling reviewed for abuse of discretion).

Moreover, the affidavits presented in the Report of Investigation (ROI) are sufficiently detailed in setting forth the undisputed material facts. The affidavits adequately explain the legitimate, non-discriminatory reasons for the actions taken. See Broaddrick v The Executive Office of the President, 139 F. Supp. 2d 55, 64 (D.D.C. 2001); See also, Goland v. CIA, 607 F.2d 339, 352-56 (D.C. Cir. 1979) (affirming district court's grant of summary judgment without discovery where agency affidavits were sufficient), cert. denied, 445 U.S. 927 (1980); Master v. F.B.I., 926 F. Supp. 193, 195-97 (D.D.C.1996) (denying discovery on search issue where court determined agency's search for documents was adequate), aff'd mem, 124 F.3d 1309 (D.C. Cir. 1997). Thus, even if the Plaintiff had established a prima facie case, he has failed to show any evidence that Defendant's legitimate business reasons for its actions were not worthy of credence.  Therefore, Plaintiff's urging at this late hour that the administrative record was inadequately developed for summary judgment should be rejected.  See Oliver v. Digital Equipment Corp, 846 F.2d 103 109-10 (1st Cir. 1988).

5

Although Plaintiff reminds the Court that discrimination cases are not as likely decided without a trial, the Court should find that the essential facts material to a disposition of the case are to be found in the extensive administrative record, and stand uncontradicted by any evidence in the record here. See Matzo v. Postmaster General, 685 F. Supp. 260, 261 (D.D.C. 1987). Defendant has moved for summary judgment relying on the administrative record of the investigation of Plaintiff's Equal Employment Opportunity (EEO) claim. Defendant contends that Plaintiff cannot meet his burden of presenting a prima facie case of discrimination, that Defendant has demonstrated an ability to meet his burden of establishing legitimate, nondiscriminatory reasons for defendant's actions, and that Plaintiff cannot meet his burden of showing that the reasons given are pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); and King v. Dept. of Interior, 785 F. Supp. 206, 207 (D.D.C. 1992).

By meeting its burden of production to show a legitimate reason for each of actions taken with regard to the Plaintiff, defendant has shifted the burden back to Plaintiff to go forward with new evidence to show pretext. Plaintiff has not shown that he can meet that burden. Accordingly, summary judgment in Defendant's favor is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323.

**B.**  **Plaintiff Has Not Met His Burden To Show A Prima Facie Where He Has Not Shown An Adverse Employment Action.**

To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting

6

the terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D. C. Cir. 1999). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Stewart v. Lewis, 275 F.3d 1126, 1134-35 (D.C. Cir. 2002) ( citing Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000)  (citation omitted); See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

> 1. On July 22, 1998, Plaintiff became aware that sick leave was put in for him rather than  LWOP which allegedly affected his CA-7 claim.

As previously argued in the Defendant's Motion for Summary Judgment, the Plaintiff telephoned in a request for sick leave on July 5, 1998.  See ROI (Ex. 1).  His supervisor marked the sick leave box and on July 22, 1998, when he returned from leave, he ratified the Form 3971 Request for Leave with his signature.  Id.  The Plaintiff did not suffer a loss because he was paid for 40 hours sick leave.  See ROI (Ex. 3b). The Plaintiff had simply been paid by the OWCP for the same time period.  Therefore, OWCP sent him a notice of overpayment and the Plaintiff was required to return the overpayment.  See ROI (Ex. 2).  The Plaintiff has offered nothing in his Opposition to contradict this material fact.

    2.    <u>On August 19, 1998, Plaintiff received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible effective April 25, 1998 resulting in a change in his seniority status.</u>

The Plaintiff's status was changed to part-time flexible on July 24, 1998 due to a July 18, 1998 settlement agreement between the Union and Postal Service.  <u>See</u> ROI (Counselor's Report p. 116).  Then, the Union and Postal Service amended the July 18, 1998 settlement agreement to restore full-time status to employees that were converted to part-time flexibles.  On December 1, 1998, the Plaintiff's status was changed back to full-time.  The Plaintiff's leave and pay was also restored. <u>See</u> ROI (Counselor's Report, p. 116).  Again, the Plaintiff has not shown that he suffered a loss or harm to a term, condition or privilege of employment for which there is a remedy.

    3.    <u>On an unspecified date, Injury Compensation Specialist provided inaccurate information on handling his claim that encouraged retaliatory responses from management.</u>

The Plaintiff is unable to show that he suffered a loss or harm to a term, condition, or privilege of employment or that there is a remedy available when he was sent home for refusing to perform his regular duties.  Approximately 2 days later, the Plaintiff notified his supervisor of an active OWCP claim that was still valid, which was different than the one that his supervisor was aware of that had been dismissed.  <u>See</u> ROI (Gramblin Affidavit D). The Plaintiff was returned to duty and received 19.42 hours of pay for the time he was away from work. <u>See</u> ROI (Ex. 16, 17).  Therefore, there is no remedy remaining for the Plaintiff.   Plaintiff has not challenged management's explanation of this action.

Moreover, even if the Court accepts as true Plaintiff's allegation that the Postal Service attempted to block his receiving full benefits and seniority, Title VII does not provide relief for victims of attempted retaliation. See Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (the District Court found in holding plaintiff's erroneous performance rating -- with its concomitant effect upon her bonus -- was not an adverse employment action because management corrected the evaluation and paid the proper bonus before plaintiff brought her suit); Russell v. Principi, 257 F.3d 815, 819 (D.C. Cir. 2001). Here, the Plaintiff suffered no adverse employment action as a result of any alleged interference by management officials.

### C.    Plaintiff Has Failed To Exhaust A Claim Of Retaliation.

The Defendant has argued that the Plaintiff failed to exhaust his administrative remedies by not contacting an EEOC counselor within 45 days after each alleged discriminatory event occurred. The Plaintiff, however, argues that because the Defendant's actions constitute retaliation the exhaustion requirement does not apply to him.  Pl.'s Opp'n at 9.  For authority the Plaintiff cites Powell v. Castenda, 399 F. Supp. 2d 1, 9 (D.D.C 2005).  This case, however, actually undermines the Plaintiff's argument. "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts constituting the claim are part of the same unlawful employment practice and at least one act falls within the time period." Powell, 399 F. Supp. 2d at 8 (citing, AMTRAK v. Morgan, 536 U.S. (2002). The court in Morgan distinguished discrete acts of discrimination from hostile work environments in the following manner:

> "Discrete acts such as termination, failure to promote, denial of transfer, or
> refusal to hire are easy to identify. Each incident of discrimination and each

9

retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' . . . The 'unlawful employment practice' [in hostile work environment claims] . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Id. at 114-15; See also Anderson v. Zubieta, 180 F.3d 329, 337 (D.C. Cir. 1999) (holding that where "'discrimination is not limited to isolated incidents, but pervades a series or pattern of events which continue to within [45] days of the filing of the charge . . ., the filing is timely . . . regardless of when the first discriminatory incident occurred.'") (alteration in original) (quoting Laffey v. NW. Airlines, 567 F.2d 429, 473 (D.C. Cir. 1976)).

In contradistinction, the Plaintiff's complaint contains an untimely complained of discrete act allegedly taken against him by the Defendant. See Complaint, ¶¶ 27-30. His claim, moreover, includes the very type of discrete act, i.e., his termination, which is identified in Morgan as a separate, actionable, unlawful employment practice. Furthermore, "the theory of continuing violation must be guardedly employed because within it are the seeds of the destruction of statutes of limitations in Title VII cases." Childers v. Slater, 44 F. Supp. 2d 8, 18 (D.D.C. 1999) (quoting Cones v. Shalala, 945 F. Supp. 342, 346 (D.D.C. 1996)). "To conveniently cast all the allegations in this complaint as a related series of discriminatory or retaliatory actions would permit this plaintiff to bypass the Title VII administrative process." Childers, 44 F. Supp. 2d at 18. The court should accordingly dismiss as untimely all allegations stemming from discrete actions for which no complaint was filed within 45 days after they occurred.

10

**D.**    **Plaintiff Has Not Established A Claim Of Rehabilitation Act Discrimination.**

To satisfy the first prong of the prima facie case for disability discrimination, the plaintiff must show that he is an individual with a disability.  Breen, 282 F.3d at 841. Under the Rehabilitation Act a disability consists of "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."  See also 42 U.S.C. § 12102(2)(A); Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001). As the Supreme Court has noted, "merely having an impairment does not make one disabled for purposes of the ADA, [c]laimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). Moreover, "a claimant must further show that the limitation on the major life activity is 'substantial.'" Id. (citing 42 U.S.C. § 12102(2)(A)).

Since the Plaintiff can lift up to 20 pounds and perform limited climbing of no more than two hours he was not substantially limited in a major life activity. See Baker v. Potter, 294 F. Supp. 2d, 33, 46 (D. D. C. 2003) ("Plaintiff was cleared to lift up to 20 pounds…[a]lthough the injury may well have been serious the plaintiff provides no evidence that the injury limited one of her major life activities…."); Rogers v. Int'l. Marine Terminals, Inc. 87 F.3d 755, 758 (5th Cir. 1996) ("Climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."). See, e.g., Kelly v. Drexel Univ., 94 F.3d 102, 106 (3rd. Cir. 1996) (affirming district court's holding that plaintiff's inability to walk more than one mile, inability to jog, and need to move slowly and hold handrail when climbing stairs did not,

11

as a matter of law, substantially limit his ability to walk); <u>Graver v. Nat'l Eng'g Co.</u>, 1995

WL 443944, at *10-11 (N.D. Ill. July 25, 1995) (finding plaintiff's limp and pain while

walking did not constitute disability); <u>Stone v. Entergy Servs., Inc.</u>, 1995 WL 368473, at

*4 (E.D.La. 1995) (finding plaintiff's inability to walk briskly or climb stairs not substantial

limitation on major life activity). <u>Garvin v. Potter</u>, 367 F. Supp. 2d 548, 562 (S.D. N.Y.

2005). Although Plaintiff's injury may well have been serious, the ability to lift up to 20

pounds and climb for two hours is not evidence that the injury substantially limited one

of his major life activities. <u>See</u> <u>Baker v. Potter</u>, 294. F. Supp. 2d 33, 36 (D. D.C. 2003).

Plaintiff's only response is his reference to <u>Lester v. Nastios</u>, 290 F. Supp. 2d 11, 24

(D.D.C. 2003). Plaintiff disingenuously quotes a portion of that case, from which he

seems to argue that if he established that is impairment is permanent or long-term that

he shows that he is limited in the major life activity of "working." However, the court in

<u>Lester</u> made no such ruling and indeed the completion of the sentence quoted by the

Plaintiff regarding the permanent or long-term impairment is that it must "substantially

limit a major life activity…." to show that an individual is disabled. <u>See</u> <u>Id</u>.

Because the Plaintiff has not shown that one of his major life activities was

substantially limited at the time the Defendant allegedly caused an adverse employment

action he has not established the first prong of his prima facie case of disability

discrimination. <u>See</u> <u>Id</u>.; <u>Breen</u>, 282 F.3d at 841; <u>See</u> <u>also</u> <u>Walker v. Ashcroft</u>, 2002 WL

335530, at *1 (D.C. Cir. 2002) (per curiam) (finding that the employee had not

sufficiently alleged that his impairment substantially limited one or more major life

activity); <u>Duncan</u>, 240 F.3d at 1115 (same). Accordingly, a court should grant the

defendant's motion for summary judgment on the disability-discrimination claim.

12

Celotex, 477 U.S. at 322; Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1998).

**E.      Plaintiff Has Not Established A Claim Of Disparate Treatment By Showing He Is Similarly Situated To His Alleged Comparators.**

Plaintiff has the initial burden of proving a prima facie case of discrimination. Id. at 802. To do so, plaintiff must establish: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) .

Plaintiff meets some of the first two elements of a prima facie discrimination claim: as a male African-American and over age forty, he is a member of protected classes. Plaintiff's claims fail, however, because he cannot establish some claims for the second element and none of the claims for the third prima facie element: that the unfavorable action gives rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135,145 (D.C. Cir. 2002). While multiple methods exist to satisfy this element, See George v. Leavitt, 407 F.3d 405, 412-413 (D.C. Cir. 2005) (describing various allegations that give rise to inference of discrimination), plaintiff asserts only a "disparate treatment" claim, i.e., that the agency discriminated against him by treating him differently from "similarly situated employees" who are not part of the protected class). Mack v. Strauss, 134 F. Supp. 2d 103, 114 (D.D.C. 2001); See also Brown, 199 F.3d at 452; Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1150 (D.C. Cir. 2004).

In reviewing the law, to be "similarly situated" for purposes of Title VII, a plaintiff must show that "all of the relevant aspects of h[is] employment situation were nearly identical'" to the comparable employee. Neuren v. Adduci, Mastriani, Meeks & Schill, 43

13

F.3d 1507, 1514 (D.C. Cir. 1995) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)).  Plaintiff argues only that he can merely plead that there are individuals similarly situated to him, which he has done.  Pl.'s Opp'n at 11.  However, unless the Plaintiff can point to evidence in the record of another employee whose conduct and conditions of employment was sufficiently "similarly situated in all material respects . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination," a disparate treatment claim under Title VII cannot succeed.  McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).   Moreover, to be considered similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ball v. Tanque, 133 F. Supp. 2d 84, 88 (D. D.C. 2001);  Phillips v. Holladay Property Servs., 937 F. Supp. 32, 37 (D. D.C. 1996), aff'd without op., 1997 U.S. App. Lexis 19033 (D. C. Cir 1997); See also Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must . . . demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of the comparators).

As is readily apparent from Plaintiff's allegations (See Complaint ¶¶ 19-26), he has failed to show that "'all of the relevant aspects of' [his] employment situation were 'nearly identical' to those of the [employees] to whom [he] compared [him]self. Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997) " (citations omitted); King v. Georgetown Univ. Hosp., 9 F. Supp. 2d 4, 7 (D.D.C. 1998).  Plaintiff has not identified any comparators, except in the most ambiguous terms, which fails to show that his

comparators were similarly situated to him.

### F.  Plaintiff Has Not Made A Prima Facie Case For A Hostile Work Environment Claim.

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, (1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, (1986). Such an environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting Meritor, 477 U.S. at 65, 67). On the other hand, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 21. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. Id. at 23; Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).   In considering the totality of the circumstances, however, the court is mindful that everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is

15

therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals. Bryant v. Brownlee, 265 F. Supp. 2d. 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)).

The Plaintiff must allege a series of events, which rise to the level of creating serious and pervasive work environment, such that it interferes with the Plaintiff's work performance.  However, the Plaintiff simply restates his prior allegations, which have been contradicted by the evidence of the record.  See Pl.'s Opp'n. at 12.  Plaintiff claims he was docked pay, but it has been corrected.  See ROI (Gramblin Aff. D; Ex 16, 17 & 18).

He further claims that management required him to provide medical documentation to support his absence.  See Complaint ¶ 29.  His denial of overtime has been shown to lack credibility with comparators since identified comparators were not in the same facility and subject to the same supervisor.  See ROI (Plaintiff's Aff. A; Ex. 7b, CBA Article 8.5).  Of course, the AWOL and termination allegations are discrete acts that rise to the level of an adverse employment action, but those discrete acts were not timely appealed and appear to have been addressed in another complaint that has been resolved. See Defendant's Motion for Summary Judgment, Attachment 3. After Plaintiff's leave was changed from sick leave to annual leave it was later changed to Leave Without Pay because he did not have sufficient annual leave to cover his absences.  See ROI (T. Grier Aff. B)  All of these are personnel issues and as the Court

16

has stated it does not assume the role of a personnel office in discrimination cases.
See Byrant, 265 F. Supp. 2d at 63.


III.    **CONCLUSION**

All claims made by Plaintiff are appropriate for dismissal or for summary

judgment.  There is no genuine issue of material fact with regard to Defendant's

non-discriminatory personnel actions and there is no evidence of pretext to rebut

Defendant's articulated legitimate non-discriminatory reasons.  Consequently, Defendant

should be granted summary judgment on all counts. In the alternative, Plaintiff's

complaint should be dismissed for failure to state a claim on which relief may be granted.



Respectfully submitted,


_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
R. CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238;(202) 514-8780 (Facsimile)
Benton.Peterson@usdoj.gov

17