UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEITH DIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-01112 |
| | ) | |
| | ) | (EGS) |
| | ) | |
| JOHN E. POTTER, | ) | |
| POST MASTER GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant respectfully moves, pursuant to Fed. R. Civ. P. 12(b) (1), and (6) to dismiss this action. In the alternative, this Court should enter summary judgment in favor of Defendant, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law.

In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities. A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. Civil Division
Washington, D.C.  20530
(202)514-7238;(202)514-8780( Facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEITH DIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-01112 |
| | ) | |
| | ) | (EGS) |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT[1]**

Defendant, Postmaster General John Potter, pursuant to LcvR 7(a) and by undersigned counsel, hereby submits the following memorandum of points and authorities in support of its motions to dismiss the Plaintiff's Complaint, or in the alternative, for Summary Judgment.

---

[1]Pursuant to Court's January 17, 2006 Minute Order, Defendant is re-submitting its Motion to Dismiss or in the Alternative for Summary Judgment, adding additional arguments to respond to Plaintiff's Amended Complaint.  Defendant, respectfully refers the Court to his Notice of Filing filed November 18, 2005, where undersigned counsel submitted to the Clerk's Office and served on opposing counsel the 1998 and 2000 Report of Investigation pertinent to the above captioned matter in CD-ROM format.  Defendant continues to rely on those documents, and these records also support Defendant's Renewed Motion to Dismiss or in the alternative for Summary Judgment, which is being filed today. However, in an attempt to be efficient, the undersigned will not re-submit the same documents previously submitted in CD-ROM format described above.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff filed two separate EEO (or administrative) complaints (1K-201-0121-98 (first complaint) and 1K-201-0001-00 (second complaint) which were consolidated under Agency Case No. 1K-201-0121-98.   Issues 2 and 3 were accepted from the first complaint, and Issues 1 and 2 were accepted from the second complaint.  In the first administrative complaint, which was filed on August 31, 1998 (see ROI Agency Case No. 1K-201-0121-98, p. 124) the Plaintiff alleges that he was discriminated against on the basis of race (black), sex (male), age (DOB 6/21/56), retaliation (prior EEO activity June 30 1997) and physical disability (back injury) in the Report of Investigation (ROI) for EEOC Case No. 100-A1-7275X when on July 22, 1998, he became aware that sick leave was put in for him rather than Leave Without Pay (LWOP) which affected his CA-7 claim (Issue 2) ; and on August 19, 1998, he received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible, effective April 25, 1998, resulting in a change in his seniority status. (Issue 3).  See 1998 Report of Investigation (ROI) (PS Form 2570, "EEO Counselor' Inquiry Report," p. 124; "Partial Acceptance/Partial Dismissal of Formal Complaint," p. 90).

In his administrative second complaint (Agency Case No. 1K-201-0001-00), consolidated with EEOC No. 100-A1-7275X, which was filed on September 28, 1999, the Plaintiff alleges he was discriminated against based on retaliation (prior EEO activity from the first complaint filed August 31, 1998) and physical disability (back injury) when on September 9, 1999, his request for sick leave was disapproved, changed to annual leave, causing him to incur three hours of leave without pay (Issue 1) and on an unspecified date, an Injury Compensation Specialist

4

provided inaccurate information on handling his claim that encouraged allegedly retaliatory responses from management (Issue 2). <u>See</u> 1998 ROI (PS Form 2570, "EEO Counselor's Inquiry Report" at p. 105; "Partial Acceptance/Partial Dismissal of Formal Complaint," p. 90).

On June 3, 2003, Administrative Judge Collazo issued a Notice of Proposed Summary Judgment in EEOC NO. 100-A1-7594X; Agency No. 1K-201-0086-00  and the Agency filed a Motion for Summary Judgment.  The Administrative Judge issued a decision in favor of the Postal Service on September 5, 2003. That complaint alleged the failure to provide the Plaintiff with overtime opportunities based on his alleged disability and for prior EEO activities.  On September 17, 2003, the Agency issued its final order that implemented the administrative judge's decision.  The Plaintiff then appealed the decision to the Office of Federal Operations (OFO) of the EEOC, which affirmed the administrative judge's summary judgment finding on March 3, 2005.  <u>See</u> Attachment # 3.

Summary judgment should be granted in this case for several reasons.  First, the Plaintiff has launched a collateral attack on the workers compensation process with respect to Issue 2 of the first administrative complaint and Issue 2 of the second administrative complaint, as well as a collateral attack on the arbitration award for Issue 3 of the first administrative complaint in consolidated EEOC Appeal No. 100-A1-7275X.  Second, the Plaintiff is unable to show that he is aggrieved with respect to any issue in this case.  Third, the Plaintiff is unable to show that he is disabled as defined by the Rehabilitation Act.  Finally, the Plaintiff is unable to establish a prima facie case of discrimination based on sex, race, age, disability or retaliation.

Even if the Plaintiff could establish a prima facie case, he is unable to show that the Postal

5

Service's legitimate, non-discriminatory reasons are pretextual. For these reasons, the Defendant urges the Court to grant its motion to dismiss or in the alternative for summary judgment with respect those claims presented in the Plaintiff's complaint.

### A.  **Factual Background**

The Plaintiff has been employed by the Postal Service since February 14, 1987. See 1998 ROI (Exhibit (Ex.) 6a). On July 5, 1998 the Plaintiff called in sick and requested 40 hours sick leave. See 1998 ROI (John Grier Affidavit (Aff.) C, p. 17). This was noted on Form 3971, Request for or Notification of Absence. See 1998 ROI (Ex. 1, p. 25). The leave was approved by several supervisors, including John Grier. Id., See also 1998 ROI (J. Grier Aff. C, p. 17). The Plaintiff signed the leave request on July 22, 1998. Id. The Plaintiff was paid for 40 hours sick leave. See 1998 ROI (Ex. 3b, p. 28). From June 30, 1998 through July 20, 1998, the Plaintiff also received payment from the Office of Workers Compensation Programs (OWCP) in the amount of $1,488.83. See 1998 ROI (Ex. 2, p. 26). On December 10, 1998, the OWCP notified the Plaintiff that he had been overpaid and sought return of the $1,488.83. Id. An employee cannot accept payment from OWCP while in a work status or while receiving sick leave payments from the Postal Service. Id.

On April 20, 1998, the Plaintiff accepted a Rehabilitation Job Offer assigning him to the position of a full-time Modified Mail Processor with the hours of 3:30 p.m. to midnight. See 1998 ROI (Ex. 7, p. 35). On April 29, 1998, the Plaintiff was changed from a Motor Vehicle Craft Tractor Trailer Driver, Level 6 to a lower level 4, Modified Mail Processor with a saved

grade level 6.  See 1998 ROI (Ex. 6a, p. 33).  Therefore, even though the skill level of a mail

processor is at level 4, the Plaintiff was paid at level 6.

On July 24, 1998, the Plaintiff's change to a lower level was cancelled and reprocessed as

a part-time flexible, effective April 25, 1998. See 1998 ROI (Ex. 6b, p. 34).  Initially, the Plaintiff

was assigned to full-time status, but that changed when, on July 18, 1998, the Union and

Management entered into a settlement agreement in order to implement the February 7, 1994

Snow Arbitration Award.  See 1998 ROI (Counselor's Report, p. 116; Bills Aff. E, p. 23).  In

1994, Arbitrator Snow concluded "that the Employer violated the parties' collective bargaining

agreement when it reassigned a full-time employee from another craft who was partially

recovered from an on-the-job injury to full-time status in the Clerk Craft."  See 1998 ROI (Ex. 9c,

p.50).  In the July 18, 1998 settlement agreement, employees reassigned prior to the 1994 ruling

were converted to full-time and those reassigned after the 1994 ruling were converted to part-time

flexible employees.  See 1998 ROI (Counselor's Report, p. 116).  Therefore, on July 24, 1998, the

Plaintiff's status was changed to part-time flexible along with all other employees in this group.

Id.; See also 1998 ROI (Bills Aff. E, p. 23). The Plaintiff's race, sex, past EEO complaints, age or

alleged physical disability were not considered when implementing the settlement agreement.

See 1998 ROI (Bills Aff. E, p. 23 and Ex. 7 and 8a – 8l, p. 35-47).

The American Postal Workers Union (hereinafter, "Union") and Postal Service agreed to

amend their July 18, 1998 settlement agreement on December 1, 1998, and Plaintiff was returned

to full-time status retroactive to April 25, 1998.  See 1998 ROI (Counselor's Report, p. 116).

Accordingly, the Plaintiff was credited for any salary and leave adjustments.  Id.

7

On September 9, 1999, the Plaintiff submitted a request for 3 hours of sick leave.  <u>See</u> 1998 ROI (Ex. 11, p.52).  In the remarks section, he claimed back and nerve problems and cited OWCP claim number 25-0514475 as the basis for his request.  <u>Id.</u>  In August 1999, the Plaintiff submitted 4 other leave requests related to an on-the-job injury because of stress and cited OWCP claim number 25-50529977.  <u>See</u> 1998 ROI (Ex. 14, 15a, 15b, & 15c, p. 55-58).  However, claim number 25-50529977 had been denied on June 10, 1999.  <u>See</u> 1998 ROI (Ex. 12, p. 53).

On September 9, 1999, there was no medical documentation on file for the Plaintiff, which would have entitled him to sick leave for the cited claim.  <u>See</u> 1998 ROI (T. Grier Aff. B, p.13). When Ms. Grier disapproved the Plaintiff's three hours of leave, she noted that there were "no meds on file."  <u>See</u> 1998 ROI (Ex. 11, p.52).  Because the Plaintiff did not have annual leave, he was in an LWOP status for three hours.  The Plaintiff states that Ms. Grier was referring to the wrong claim number when she denied the leave.  <u>See</u> 1998 ROI (Plaintiff. Aff. A, p.10).

In his affidavit, the Plaintiff states that in August, Injury Compensation Specialist Grier provided inaccurate information to Mr. Gramblin that his claim had been denied.  <u>See</u> 1998 ROI (Plaintiff. Aff. A, p. 11).  The Plaintiff does not state a specific date or year in which this happened.  <u>Id.</u>  However, on June 10, 1999, the Plaintiff's OWCP claim number 25-50529977 was denied.  <u>See</u> 1998 ROI (Ex. 12, p.53).  Ms. Grier, as she does with all denied claims, informed the operations managers that Mr. Diggs' OWCP claim had been denied.  <u>See</u> 1998 ROI (T. Grier Aff. B, p. 14).  Upon notification that the Plaintiff's OWCP claim had been denied, Mr. Gramblin believed that the Plaintiff was able to perform his regular duties.  <u>See</u> 1998 ROI

(Gramblin Aff. D, p. 20).  Mr. Gramblin did not know that the Plaintiff had more than one OWCP claim and the Plaintiff did not immediately inform Mr. Gramblin. Id.

When Mr. Gramblin assigned the Plaintiff to his regular duties, he refused to perform them. See 1998 ROI (Gramblin Aff. D, p. 20).  As a result, he was placed in an off-duty status. Id.  After approximately 2 days, the Plaintiff returned with documentation to show that he had more than one claim, and that only his 25-50529977 claim for stress had been denied, not his 25-0514475 back injury claim.  See 1998 ROI (Plaintiff Aff. A, p. 11).  The Plaintiff filed a grievance for his lost time and was compensated for 19.42 hours. See 1998 ROI (Ex. 16, 17 and 18 p. 61-63; Counselor's Report, p. 133 (last 10 lines)).  He returned to his limited duty job.  See 1998 ROI (Gramblin Aff. D, p. 19).

At that time, the Plaintiff was unable to show that John Grier was aware of his prior EEO activity.  John Grier was the Attendance Control Supervisor for Washington Processing and Distribution Center and did not directly supervise the Plaintiff in his day-to-day duties. See 1998 ROI (J. Grier Aff. C, p. 17).  Toni Grier was not aware of the Plaintiff's prior EEO activity. See 1998 ROI (Toni Grier Aff. B, p. 14).  Edgar Gramblin did not know the Plaintiff nor was he aware of the Plaintiff's prior EEO activity.  See 1998 ROI (Gramblin Aff. D, p. 20).  The Plaintiff has claimed that he is disabled based on the following restrictions:  lifting up to 20 pounds (See 1998 ROI (Ex. 19o, p.78)); Plaintiff can push and pull up to 30 pounds (See 1998 ROI (Ex. 19n, p. 77); and his doctor prohibited him from operating a truck, crane and tractor trailer. See 1998 ROI (Ex. 19o, p. 78).   Plaintiff alleged a claim of discrimination based on race (black) and disability (unknown) when on May 3, 2000 he was not provided overtime even

9

though he was on the overtime desired list. <u>See</u> Plaintiff's Complaint, ¶¶ 24-26. The Plaintiff was a Mail Processor, Level 6, assigned to Tour 3, Pay Location 396 at the V Street Annex, Return to Sender Unit. <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 3 & 4, pp. 19-20). His supervisor at the V Street Annex was Deborah Boston, EAS-16 (black, disability unknown). <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Boston Aff. B, p. 11). William Darryl Martin (black, disability unknown) was the Senior Manager Distribution Operation, EAS-25 at the Brentwood Road facility. <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Martin Aff. C, p.13). Return to Sender mail is mail in which a delivery attempt had been made, but for some reason the mail needs to be returned to the sender as undeliverable. <u>See</u> ROI Agency Case No. 1K-201-0086-00 (Boston Aff. B, p. 11). Mail that is being returned to sender is not time sensitive and therefore does not warrant paying employees premium overtime pay to expedite processing. <u>Id.</u>

With respect to the Plaintiff's claim of disability, he desired to work overtime on his non-scheduled day and signed the Overtime Desired List. <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Plaintiff Aff. A, p. 8). On Wednesday, May 3, 2000, the Plaintiff worked from 4:00 p.m. until 10:00 p.m. after which he took 2 hours of annual leave. <u>Id.</u> Under the Collective Bargaining Agreement (CBA), those absent or on leave shall be passed over for overtime. <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Ex.7b, CBA at Art. 5(c)(1)(b), p. 41). Moreover, no overtime was awarded in the Plaintiff's work group on May 3, 2000, or for that matter at any time. <u>See</u> 2000 ROI Agency Case No. 1K-201-0086-00 (Plaintiff Aff., p. 8; Boston Aff. B, p. 11; and Ex. 5a, p. 52).

10

The Plaintiff alleges that overtime was awarded to employees in pay locations 030, 040 and 150. See 2000 ROI Agency Case No. 1K-201-0086-00 (Plaintiff Aff. A, p.8). Pay locations 030, 040 and 150 are not located at the V Street Annex, rather they are located at the General Mail Facility (GMF) in the Brentwood Road facility several miles away. Id. The Collective Bargaining Agreement states that "[w]hen needed, overtime work for full-time employees shall be scheduled among qualified employees doing similar work in the work location where the employees regularly work¼" See 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 7b, CBA Art. 5, p. 41).

On May 6, 2000, the Plaintiff filed a grievance alleging that he should have been awarded the overtime in pay locations 030, 040, 150. See 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 5a, p.21). In his grievance he stated that "Management has never offered Overtime or working on Holidays to myself [Plaintiff] and all injured employees stationed at V Street annex¼" Id. On July 29, 2000, the grievance was resolved stating in part, "In the overtime matter [of the grievance] the Union was unable to find any contractual violation. The LMOU [Letter of Memorandum and Understanding] states you must be physically assigned to the P&DC to be placed on the OTDL list." See 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 5b, p.22). The Executive Vice-President of the APWU stated that "no contractual violation exists." See 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 5c, p. 23).

Plaintiff has claimed a disability based on his ability to intermittently sit and walk 8 hours, squat, kneel and stand 4 hours. See 2000 ROI Agency Case No. 1K-201-0086-00 (Ex. 4, p.20).

11

He is able to lift up to 20 pounds, climb and twist 2 hours.  Id.  He is able to work above the shoulder, do simple grasping, fine manipulation, pushing and pulling.  Id.

## II.    ANALYSIS

### A.    Plaintiff Has Failed To Exhaust Administrative Remedies With Respect To His Allegations.

Plaintiff has not exhausted his administrative remedy with regard to allegations contained in paragraphs 27-29 of his Complaint. Therefore, such allegations should be dismissed because timely exhaustion of administrative remedies is a prerequisite to filing suit in federal court pursuant to Title VII. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.110 (1997) (following the final decision of an agency, an employee may either appeal to the Equal Employment Opportunity Commission or file a civil action in federal district court); Zografov v. V.A. Medical Ctr., 779 F.2d 967, 968-69 (4th Cir. 1985). The reason for limiting claims to present violations (i.e., those for which a timely complaint was filed or for which a discriminatory scheme is alleged) is to "protect employers from the burden of defending claims arising from employment decisions that are long past."  Delaware State College v. Ricks, 449 U.S. 250 (1980); Caldwell v. ServiceMaster Corp., 966 F. Supp. 33, 49 (D.D.C. 1997).

Under 29 C.F.R. § 1614.105(a)(1), an employee who alleges discrimination must consult an agency EEO counselor before filing a complaint of discrimination, and must do so within 45 days of the "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

12

Plaintiff can not excuse his failure to exhaust his administrative remedies with regard to allegations in paragraphs 27 through 29 of his Complaint by arguing that a "reasonable relation" exists between other paragraphs in his Complaint and his other properly exhausted EEO Complaints.  Such an argument would be without merit because a Title VII claim in federal court is limited in scope and must be "like or reasonably related to the allegations of the [EEO] charge and growing out of such allegations." <u>Park v. Howard Univ.</u>, 71 F.3d 904, 907 (D. C. Cir. 1995) (citing <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994)) (emphasis added).  The Seventh Circuit clarified this requirement by explaining that to be reasonably related, an "EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." <u>Kersting v. Wal-Mart Stores</u>, 250 F.3d 1109, 1119 (7th Cir. 2001) (<u>citing</u> <u>Cheek</u>, 31 F.3d at 501) (emphasis in original). This Court has adopted the Seventh Circuit's formulation. <u>See</u> <u>Carroll v. England</u>, 321 F. Supp. 2d 58, 65 (D. D.C. 2004).

Clearly then the circumstances set forth in paragraphs 27 through 29 of the Complaint , which he claims are tantamount to termination and absence without official leave, are not reasonably related to the facts alleged in Plaintiff's prior administrative complaints.  Moreover, the attached informal complaint (<u>See</u> Attachment 1) and its settlement (<u>See</u> Attachment 2) demonstrate that an administrative appeal on this issue did not move beyond the initial stages and appears to be resolved.[2]

---

[2] The EEOC's Office of Federal Operations ruled in favor of the Postal Service on April 27, 2005 by finding that the Postal Service had not breached the settlement agreement.  <u>See</u> Attachment 3.

13

**B.    Several Of Plaintiff's Claims Are Not Adverse Employment Actions.**

To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D. C. Cir. 1999). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Stewart v. Lewis, 275 F.3d 1126, 1134-35 (D.C. Cir. 2002) ( citing Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (citation omitted); See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

**1.    Plaintiff's claim that on July 22, 1998, Plaintiff became aware that sick leave was put in for him rather than LWOP which a affected his CA-7 claim (Complaint ¶ 17).**

The Plaintiff telephoned in a request for sick leave on July 5, 1998. See 1998 ROI (Ex. 1, p.25). His supervisor marked the sick leave box and on July 22, 1998, when he returned from leave, he ratified the Form 3971 Request for Leave with his signature. Id. The Plaintiff did not suffer a loss because he was paid for 40 hours sick leave. See 1998 ROI (Ex. 3b, p.28). In addition, the Plaintiff was paid by the OWCP for the same time period. On December 10, 1998, OWCP sent him a notice of overpayment and the Plaintiff was required to return $1,488.83. See

14

1998 ROI (Ex. 2, p.26).  The Plaintiff actually benefited from receiving two paychecks during this period, and is unable to show that he suffered a loss or harm to a term, condition, or privilege of employment.

> 2.    **Plaintiff's claim that on August 19, 1998, Plaintiff received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible effective April 25, 1998 resulting in a change in his seniority status.**

The Plaintiff's status was changed to part-time flexible on July 24, 1998 due to a July 18, 1998 settlement agreement between the Union and Postal Service.  See Complaint ¶ 18; 1998 ROI (Counselor's Report p. 116).  In 1994, Arbitrator Snow concluded "that the Employer violated the parties' collective bargaining agreement when it reassigned a full-time employee who was partially recovered from an on-the-job injury to full-time status in the Clerk Craft."  See 1998 ROI (Ex. 9c, p.50).  As a result of the Snow Arbitration, employees assigned to full-time positions after February 7, 1994, no longer had a right to the full-time position.  They were converted to part-time flexible employees.  The Plaintiff was among those in the group affected by the settlement agreement.

Then, the Union and Postal Service amended the July 18, 1998 settlement agreement to restore full-time status to employees that were converted to part-time flexibles.  On December 1, 1998, the Plaintiff's status was changed to full-time.  The Plaintiff's leave and pay was also restored.  See 1998 ROI (Counselor's Report, p. 116).  Therefore, the Plaintiff is unable to show that he suffered a loss or harm to a term, condition or privilege of employment for which there is a remedy.

15

3.    **Plaintiff's claim that on an unspecified date, Injury Compensation Specialist Grier provided inaccurate information on handling his claim that encouraged retaliatory responses from management.**

The Plaintiff is unable to show that he suffered a loss or harm to a term, condition, or privilege of employment or that there is a remedy available when he was sent home for 2 ½ days for refusing to perform his regular duties. See Complaint ¶ 23.   Mr. Gramblin received notice from Toni Grier that the Plaintiff's OWCP claim had been denied. See 1998 ROI (Grier Aff. B, p. 14).  Upon notification that the Plaintiff's OWCP claim had been denied, Mr. Gramblin believed that the Plaintiff was able to perform his regular duties.  See 1998 ROI (Gramblin Aff. D, p. 20).  Mr. Gramblin did not know that the Plaintiff had more than one OWCP claim and the Complainant did not immediately inform Mr. Gramblin. Id. Accordingly, the Plaintiff was sent home for refusing to perform regular duties.

Approximately 2 days later, the Plaintiff notified Mr. Gramblin of an OWCP claim that was still valid.  The Plaintiff was returned to duty and received 19.42 hours of pay for the time he was away from work. See 1998 ROI (Ex. 16, 17, p. 61-62).  Therefore, there is no remedy remaining for the Plaintiff.

To be sure, loss of pay, benefits and seniority because of an improper management action may constitute an adverse employment action for the purposes of Title VII and Rehabilitation Act. However, in this case, even if the Court accepts as true Plaintiff's allegation that the Postal Service attempted to block his receiving full benefits and seniority, Title VII does not provide relief for victims of 'attempted' retaliation. See Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir.

16

2003) (the District Court found in holding plaintiff's erroneous performance rating -- with its concomitant effect upon her bonus -- was not an adverse employment action because management corrected the evaluation and paid the proper bonus before plaintiff brought her suit); Russell v. Principi, 257 F.3d 815, 819 (D.C. Cir. 2001).  Here, the Plaintiff suffered no adverse employment action as a result of any alleged interference by management officials.

The D. C. Circuit Court has agreed with the other circuits that have addressed the question that an employer may cure an adverse employment action before that action is the subject of litigation.  See Taylor, 350 F.3d at 1293; See also White v. Burlington Northern & Santa Fe Railway Co., 310 F.3d 443, 452 (6th Cir. 2002) (reinstatement that "puts the plaintiff in the same position she would have been in absent the suspension constitutes the 'ultimate employment decision,' thereby negating a potentially adverse intermediate employment decision"), reh'g en banc granted and judgment vacated, 321 F.3d 1203 (6th 2003); Pennington v. City of Huntsville, 261 F.3d 1262, 1267-68 (11th Cir. 2001) (no adverse employment action where plaintiff initially denied but shortly thereafter received promotion); Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998) ("We need not address whether a mere delay in promotion constitutes an adverse employment action because [plaintiff] received the promotion with retroactive pay and seniority"); cf. Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc) ("there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of ... Title VII").

Assuming that the failure to timely award Plaintiff with leave, pay or other benefits could

17

have been an adverse employment action giving rise to a retaliation claim, certainly it no longer is.  Plaintiff has now received all the leave, pay, seniority and benefits he was owed, and the rescission and correction of an employment action means that it is no longer "adverse." Burton v. Batista, 339 F. Supp. 2d 97, 113 (D. D.C. 1004); See also Dobbs-Weinstein v. Vanderbilt Univ., 185 F.3d 542, 544 (6th Cir. 1999) (employment action is not adverse when it is rescinded and full back pay is awarded); Holmes v. Am. Drug Stores, Inc., 2003 WL 21147807, at *5 (N.D. Ill. 2003) (no adverse employment action where demotion was rescinded and full back pay provided). The U. S. Postal Service, moreover, explained the administrative oversight that caused the delay in processing Plaintiff's leave and sending him home without pay when he refused to work an assignment that was beyond his medical restrictions, as well as his restoration to full-time duty status following the Snow Arbitration Award.  Moreover, Plaintiff has not disputed this legitimate, non-discriminatory explanation, which is sufficient to defeat any claim of retaliation.

Thus, to have an actionable Title VII claim, Plaintiff must prove that some "negative consequences" resulted from the personnel action taken by the employer. Rowland v. Riley, 5 F. Supp. 2d 1, 3 (D. D.C. 1998); Brown v. Bentsen, 921 F. Supp. 1, 2 (D.D.C. 1995).  Title VII, ADEA and disability laws, however, do not guarantee an employee a comfortable work environment. Moreover, there is no evidence to demonstrate that Plaintiff "suffered objectively tangible harm." Brown, 199 F.3d at 457.  Simply stated, without evidence establishing an adverse employment action that affected the terms, conditions, or privileges of his employment, Plaintiff cannot succeed on his discrimination claims.  See Mayers v. Laborers' Health and Safety Fund of

18

North America, Civil Case No. 01-2671 (RJL), U. S. Dist. Lexis 17781, *6 (D. D.C. 2005). No adverse employment action was taken against Plaintiff because there has been no significant change in his employment status or benefits. See Burlington Indus., Inc. v. Ellereth, 524 U.S. 742, 761, (1998); Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999). Finding no such evidence, summary judgment should be entered in favor of the Defendant.

**C.** **Plaintiff Cannot Show A Prima Facie Case Of Race, Sex And Age Discrimination.**

1. **Legal Standard**

Where, as here, a Plaintiff offers no direct evidence of discrimination, employment discrimination claims are governed by the familiar framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973). See also, Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000); Duncan v. Washington Metropolitan Area Transit Authority, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (employing McDonnell-Douglas test for ADA claim). Under this test, Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the Plaintiff is able to establish a prima facie case, then Defendant must produce a legitimate, nondiscriminatory reason. Id. If defendant is successful, then "the McDonnell Douglas framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is] discrimination vel non." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43.

19

At that point, Plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. Burdine, 450 U.S. at 256; See also Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003) "At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997). Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256.

Of course, at all times, the Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination. Burdine, 450 U.S. at 252-53. In this context, in Reeves, 530 U.S. at 148, Justice O'Connor recognized occasions where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact finder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

In the instant matter, Plaintiff can neither meet his prima facie requirements nor set forth

any facts to contradict Defendant's non-discriminatory explanations.  Allegations of race, sex and

age discrimination in violation of Title VII and the ADEA are analyzed under the familiar

McDonnell Douglas three-part "shifting burdens" test. McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973). Plaintiff has the initial burden of proving a prima facie case of discrimination.

Id. at 802. To do so, Plaintiff must establish: (1) that he is a member of a protected class; (2) that

he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an

inference of discrimination. Brown, 199 F.3d at 452.  Plaintiff meets some of the first two

elements of a prima facie discrimination claim: as a male African-American and over age forty,

he is a member of protected classes.  Plaintiff's claims fail, however, because he cannot establish

some claims for the second element and none of the claims for the third prima facie element: that

the unfavorable action gives rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135,

145 (D.C. Cir. 2002). While multiple methods exist to satisfy this element, See George v. Leavitt,

407 F.3d 405, 412-413 (D.C. Cir. 2005) (describing various allegations that give rise to inference

of discrimination), Plaintiff asserts only a "disparate treatment" claim, i.e., that the agency

discriminated against him by treating him differently from "similarly situated employees" who

are not part of the protected class). Mack v. Strauss, 134 F. Supp. 2d 103, 114 (D.D.C. 2001**);** See

also, Brown, 199 F.3d at 452; Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1150 (D.C. Cir.

2004).

            To be "similarly situated" for purposes of Title VII, a plaintiff must show that

"all of the relevant aspects of h[is] employment situation were nearly identical'" to the

21

comparable employee. <u>Neuren v. Adduci, Mastriani, Meeks & Schill</u>, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting <u>Pierce v. Commonwealth Life Ins. Co.</u>, 40 F.3d 796, 802 (6th Cir. 1994)). Unless the plaintiff can point to evidence in the record of another employee whose conduct and conditions of employment was sufficiently "similarly situated in all material respects . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination," a disparate treatment claim under Title VII cannot succeed. <u>McGuinness v. Lincoln Hall,</u> 263 F.3d 49, 54 (2d Cir. 2001).   Moreover, to be considered similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>Ball v. Tanque,</u> 133 F. Supp. 2d 84, 88 (D. D.C. 2001); <u>Phillips v. Holladay Property Servs.</u>, 937 F. Supp. 32, 37 (D. D.C. 1996), aff'd without op., 1997 U.S. App. Lexis 19033 (D. C. Cir 1997); <u>see</u> <u>also</u>, <u>Holbrook v. Reno</u>, 339 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must . . . demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of the comparators).

### 2. **Plaintiff has failed to establish a prima facie case with respect to the issues raised in his complaint.**

As is readily apparent from Plaintiff's allegations, he has failed to show that "'all of the relevant aspects of "[his] employment situation were 'nearly identical' to those of the [employees] to whom [he] compared [himself]." <u>Mungin v. Katten Muchin & Zavis</u>, 116 F.3d 1549, 1554 (D.C. Cir. 1997) " (citations omitted); <u>King v. Georgetown Univ. Hosp.</u>, 9 F. Supp. 2d 4, 7

22

(D.D.C. 1998).

       **a. Plaintiff's claim that on July 22, 1998, he became aware that sick leave was put in for him rather than LWOP which affected his CA-7 claim (Complaint ¶ 17).**

Mr. Grier has stated that he handles all leave requests the same regardless of race, sex, age or alleged disability.  <u>See</u> 1998 ROI (Grier Aff. C, p. 16). The Plaintiff's subsequent leave request on July 16, 1998 was handled in an identical manner.  <u>See</u> 1998 ROI (Ex. 1, p.25 (top)).  The Plaintiff is unable to show that a similarly situated person outside his protected class was treated differently, or that but for his race, sex, age or alleged disability the adverse action of which he complains would not have occurred.

Additionally, the Postal Service authorized the Plaintiff's sick leave on July 22, 1998 after the Plaintiff had signed Form 3971. <u>See</u> 1998 ROI (Ex. 1, p. 25).  Nor is the Plaintiff able to show that the Postal Service's nondiscriminatory reasons are false.

       **b. <u>Plaintiff's claim that on August 19, 1998, he received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible effective April 25, 1998 resulting in a change in his seniority status (Complaint ¶ 18).</u>**

Numerous employees were affected by the Snow Arbitration Award and the settlement agreement based on the award.  <u>See</u> 1998 ROI (Bills Aff. E, p.23; <u>See</u> <u>also</u> Counselor's Report, p. 116).  Women older and younger than the Plaintiff were subjected to the same change in status as

23

the Plaintiff.  See 1998 ROI (Ex. 8a- 8l).  All had on-the-job injuries.  Id.  The Plaintiff is unable to show that a similarly situated employee outside his protected class was treated differently.

Even if he could establish a prima facie case of discrimination, the Plaintiff is unable to show that the Snow Arbitration Award did not apply to him, or that the subsequent settlement between the Union and the Postal Service was not the true reason for changing his status.  As already argued, the Plaintiff's status was changed to full-time on December 1, 1998 and his pay and leave entitlements were restored.

> c. Plaintiff's claim that on September 9, 1999, his request for sick leave was disapproved, changed to annual leave, causing him to incur three hours of leave without pay (Complaint ¶ 19).

Here again, the Plaintiff is unable to show that a similarly situated person outside his protected class was treated differently.  The Plaintiff filed several requests for leave by citing his OWCP claim that had been denied.  In August 1999, the Plaintiff submitted 4 other leave requests related to an on-the-job injury because of stress and cited OWCP claim number 25-50529977.  See 1998 ROI (Ex. 14, 15a, 15b, & 15c, p. 55-58).    However, claim number 25-50529977 was denied on June 10, 1999.  (1998 ROI at Ex. 12, p. 53).  The Plaintiff is unable to show that anyone else sought leave and was approved on the basis of a denied OWCP claim.    See Complaint ¶ 19. Those claims were legitimately denied and the Plaintiff has no basis to contradict this fact.

Ms. Grier claims that there was no medical documentation on file, and stated so on the Plaintiff's leave request.  See 1998 ROI (T. Grier Aff. B, p.13).  The Plaintiff admits that Ms.

Grier may have been referring to the wrong claim.  See 1998 ROI (Plaintiff Aff. A, p.10). Because Ms. Grier changed his sick leave request to annual leave, she did not seek to deprive the Plaintiff of 3 hours pay.  See 1998 ROI (Affs. B, p. 15; D, p. 20).  If anything, this was a mistake or unintentional error, and therefore, is also not a basis for establishing pretext.

> d.   Plaintiff's claim that on an unspecified date, an Injury Compensation Specialist provided inaccurate information on handling his claim that encouraged retaliatory responses from management (Complaint ¶ 19).

On June 10, 1999, the Plaintiff's OWCP claim number 25-0529977 was denied.  See 1998 ROI (Ex. 12, p. 53).  Ms. Grier, as she does with all denied claims, informed the operations managers that Mr. Diggs' OWCP claim had been denied.  See 1998 ROI (Grier Aff. B, p. 14). Upon notification that the Plaintiff's OWCP claim had been denied, Mr. Gramblin believed that the Plaintiff was able to perform his regular duties.  See 1998 ROI (Gramblin Aff. D, p. 20).  Mr. Gramblin did not know that the Plaintiff had more than one OWCP claim and the Plaintiff did not immediately inform Mr. Gramblin. Id.

When Mr. Gramblin assigned the Plaintiff to his regular duties, he refused to perform them. See 1998 ROI (Gramblin Aff. D, p. 20).  As a result, he was placed in an off-duty status. Id.  After approximately 2 days, the Plaintiff returned with documentation to show that he had more than one claim, and that only his 25-0529977 claim for stress had been denied, not his 25-0514475 back injury claim.  See 1998 ROI (Plaintiff Aff. A, p. 11).  The Plaintiff filed a grievance for his lost time and was compensated for 19.42 hours. See 1998 ROI (Ex. 16, 17 and

25

18; See also Counselor's Report, p. 133 (last 10 lines)).  He returned to his limited duty job.  See 1998 ROI (Gramblin Aff. D).

                        e. Plaintiff cannot show disparate treatment in the assignment of overtime.

        Plaintiff compares his lack of overtime in his operation where overtime is not required to different operations in different locations with different supervisors.  See Complaint ¶¶ 24-26. Therefore, Plaintiff does not attempt to claim that he is similarly situated for overtime assignments except for other employees in a different location with different duties with respect to overtime assignments.  Plaintiff worked at a different location, in a different position than employees who worked in work locations 030, 040 and 150, which were located in a separate work location with different duties and different supervisors. Working in different locations or reporting to different supervisors are important factors in the similarly situated analysis. See Plalasti v. Federal Express Corp., Case No. 02 C1888, 2003 U. S. Dist. Lexis 7256, at *10 (N.D. Il. 2003); Gonzalez v. N.Y. City Transit Auth., 00 Civ. 4293 (SHS) (AJP) 2001 U.S. Dist. Lexis 5908, at *57 (S.D.N.Y. 2001) (noting that other employees plaintiff claimed were "comparable worked at another Transit Authority facility" as part of holding that those employees were not similarly situated to plaintiff); Ramos v. Marriott Int'l. Inc., 134 F. Supp. 2d 328, 340 (S.D.N.Y. 2001) (noting that plaintiff and co-employee "answered to the same supervisor" as part of holding that plaintiff and co-employee were similarly situated).

        Thus, comparing different jobs with different duties and qualifications is like comparing

26

apples to oranges.  Plaintiff and comparative employees for overtime held different jobs, with different qualification requirements and duties.  See Gettings v. Building Laborers Local 310 Fringe Benefits Fund, 349 F. 3d 300, 306 (6ᵗʰ Cir. 2003); Chacko v. Dynair Services, Inc., 96 CV 2220 (SJ) 2001 U. S. Dist. Lexis *35 (E.D. N.Y 2001).  Plaintiff has put forward no allegation that any employees outside his protected categories with similar responsibilities and work location with the same supervisor were granted overtime. Instead, he points only to his own statements that certain other employees were required to work overtime.  These 'comparators' were in no sense similarly situated, and thus whatever overtime was afforded to them, the Plaintiff cannot use his situation to establish a prima facie of discrimination. See Neuren v. Adduci, Mastriana, Meeks & Schill, 43 F.3d 1507, 1514, (D.C. Cir. 1995) (in order to show that she was "similarly situated," plaintiff "required to demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to those of the male associate") (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)); See also Mungin v. Katten Munchin & Zavis, 116 F.3d 1549, 1554, (D.C. Cir. 1997) (same); Dickerson v. Sectek Inc., 238 F. Supp. 2d 66, 77 (D. D.C. 2002).

### D.    **Plaintiff Can Not Establish A Prima Facie Of Retaliation.**

In order to establish a prima facie case of retaliation, Plaintiff must demonstrate: (1) that he engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. Brown, 199 F.3d at 452;

27

Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985). As with a disparate treatment claim, once the plaintiff satisfies the elements of the prima facie claim, the burden shifts to the Defendant to articulate a legitimate reason for its personnel action. If the employer is able to do so, the ultimate burden remains with the plaintiff to prove that the defendant's stated rationale is pretextual. See Cones v. Shalala, 199 F.3d 512, 520-21 (D.C. Cir. 2000).

Plaintiff has successfully established the first element of his retaliation claim because Plaintiff did engage in previous protected activity by filing a formal EEO complaint on June 30, 1997 in Agency Case No. 1K-201-0127-97 and on September 28, 1995 in Agency Case No. 1-D-201-1009-96 in support of his retaliation claim in the first administrative complaint for EEOC Appeal No. 100-A1-7275X (Agency Case No. 1K-201- 0121-98).  The individual complaint for Agency Case No. 1K-201-0121-98 was filed on August 31, 1998 and was the most recent administrative complaint prior to the Plaintiff's second administrative complaint in Agency Case No. 1K-201-0001-00 for EEOC Appeal No. 100-A1-7275X, which was filed on September 28, 1999.  However, Plaintiff's alleged claim of an adverse employment action in his retaliation claim hinges on his ability to demonstrate causation.

Plaintiff has presented no direct evidence of discrimination.  In the absence of direct evidence, the Court may infer a causal connection on a "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Mitchell, 759 F.2d at 86. "By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed for a prima facie case of retaliation."

28

Brodetski v. Duffey, 141 F. Supp. 2d 35, 42-43 (D.D.C. 2001). Plaintiff cannot point to evidence that the agency officials responsible for his claimed adverse actions had any knowledge of his protected EEO activity.  All of the Plaintiff's supervisors denied having any knowledge of Plaintiff's EEO complaint when he allegedly suffered an adverse action.  See 1998 ROI (Affs. B, C & D, pp. 13-21).  Nevertheless, even assuming knowledge, the Plaintiff cannot establish causation.

     To establish causation, Plaintiff must pair knowledge with proximity.  He is unable to do so.  Courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions.  Brodetski, 141 F. Supp. 2d at 43. Nevertheless, when a court is asked to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality," the Supreme Court has cautioned that "the temporal proximity must be very close.'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). In two of the cases the Supreme Court cited to support this proposition, the circuit courts rejected delays of less than 4 months as insufficient to establish causation. See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (3-month delay insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month delay insufficient). Courts in this District have often followed a three-month rule to establish causation on the basis of temporal proximity alone. See Buggs v. Powell, 293 F. Supp. 2d 135, 148 (D.D.C. 2003); Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to end of three-month window as

29

"outer limit" of "temporal requirement in a retaliation case").

In this case, the Plaintiff engaged in EEO activity on June 30, 1997; August 31, 1998 and September 28, 1999. (1998 ROI at Ex. 22, p.82). A year had passed between the June 30, 1997 activity and the time the Plaintiff suffered an alleged adverse action on July 22, 1998 and August 19, 1998. See 1998 ROI, Administrative Complaint 1, p.105. Also a year had passed since the August 31, 1998 activity and the September 9, 1999 alleged adverse action. See 2000 ROI, Administrative Complaint 2, p.52. Therefore, the Plaintiff cannot establish a nexus between the protected activity and the alleged adverse action.[3]

Faced with this set of facts, Plaintiff cannot, as a matter of law, demonstrate causation on the basis of knowledge and temporal proximity, Clark Cty. Sch. Dist., 532 U.S. at 273, and has therefore failed to establish a prima facie case of retaliation.

**E.      Plaintiff Does Not Meet The Definition Of A Disabled Person Under The Disability Laws.**

To satisfy the first prong of the prima facie case for disability discrimination, the Plaintiff must show that he is an individual with a disability. Breen, 282 F.3d at 841. Under the Rehabilitation Act a disability[4] consists of "a physical or mental impairment that substantially

---

2   Plaintiff does not allege retaliation as a result of the September 28, 1999 activity. See, 2000 ROI, Administrative Complaint 2, p.52.

**4**   The Rehabilitation Act forbids discrimination against a "qualified handicapped person" 45 C.F.R. § 84.4(a). A "handicapped person" is one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." Id. at § 84.3(j) (1). "Major life activities" are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. at § 84.3(j) (2)(ii). A "qualified handicapped person" is one "who, with reasonable accommodation, can perform the essential functions

limits one or more of the major life activities of [an] individual."  See also, 42 U.S.C. §

12102(2)(A);[5] Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001).

As the Supreme Court has noted, "merely having an impairment does not make one disabled for

purposes of the ADA[; c]laimants also need to demonstrate that the impairment limits a major life

activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). Moreover, "a

claimant must further show that the limitation on the major life activity is 'substantial.'" Id. (citing

42 U.S.C. § 12102(2)(A)).

The McDonnell Douglas burden-shifting algorithm developed for Title VII applies

equally in Rehabilitation Act cases. Barth v. Gelb, 2 F.3d 1180, 1185 (D.C. Cir. 1993) ("courts

allocating burdens of proof under the Rehabilitation Act have been prone to adapt and employ the

familiar principles of McDonnell Douglas as elaborated by Burdine").  In order to trigger it, a

plaintiff must show 1) that he is disabled within the meaning of the Act, 2) that he was qualified

to perform his duties with or without a reasonable accommodation, 3) that he endured an adverse

---

of the job in question." Id. at § 84.3(k) (1). Recipients of federal funds must reasonably accommodate "the known
physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient
can demonstrate that the accommodation would impose an undue hardship on the operation of its program." Id. at
§ 84.12(a).

[5]  "The standards used to determine whether this section has been violated in a complaint alleging
employment discrimination under this section shall be the standards applied under title I of the Americans with
Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of 501 through 504, and 510, of the
Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to
employment." 29 U.S.C. § 794(d). According to the D.C. Circuit, "it would seem reasonable for courts to look to
the body of law developed under Title VII for guidance in enforcing comparable rights protected under the
Rehabilitation Act," Barth, 2 F.3d at 1183. "An alternative, but related, source of authority defining the rights of
the handicapped under sections 501 and 504 [of the Rehabilitation Act] are the regulations promulgated,
respectively, by the Equal Employment Opportunity Commission (" EEOC") and the Department of Health and
Human Services ("HHS")." Id. 2 F.3d at 1184; Baker v. Potter, 294 F. Supp. 2d 33, 45-46 (D. D.C. 2003).

31

employment action at the hands of his employer.  Battle v. Mineta, Civ. Action No. 01-2213 (JR), 2005 U. S. Dist. Lexis 19392, *7 (D. D.C. 2005) Stewart v. Rondeau, 940 F. Supp. 7, 8 (D.D.C. 1996) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993), cert. denied, 511 U.S. 1011 (1994).

In this case, to demonstrate that he was an individual with a disability when the Defendant allegedly discriminated against the Plaintiff, the Plaintiff must show that he had a physical impairment that substantially limited at least one of his major life activities.  Id. The record in this case shows that the Plaintiff is able to walk, talk, learn, see, hear, work and lift up to 20 pounds. See 1998 ROI (Ex. 19o, p.78).  The Plaintiff, in this case, can push and pull up to 30 pounds.  See 1998 ROI (Ex. 19n, p. 77).  His doctor prohibited him from operating a truck, crane and tractor trailer. See 1998 ROI (Ex. 19o, p. 78).  In EEOC Case No. 100-A1-7594X, the Plaintiff is able to intermittently sit and walk 8 hours, squat, kneel and stand 4 hours.  See 2000ROI (Ex. 4, p.20). He is able to lift up to 20 pounds, climb and twist for 2 hours.  Id.  He is able to work above the shoulder, do simple grasping, fine manipulation, pushing and pulling.  Id.

Since the Plaintiff can lift up to 20 pounds and perform limited climbing of no more than two hours he is not substantially limited in a major life activity. See Baker v. Potter, 294 F. Supp. 2d, 33, 46 (D. D. C. 2003) ("Plaintiff was cleared to lift up to 20 pounds¼[a]lthough the injury may well have been serious the Plaintiff provides no evidence that the injury limited one of her major life activities¼."); Rogers v. Int'l. Marine Terminals, Inc. 87 F.3d 755, 758 (5th Cir. 1996) ("Climbing is not such a basic, necessary function and this court does not consider it to qualify as

a major life activity under the ADA."). <u>See</u>, e.g., <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 106 (3d Cir. 1996) (affirming district court's holding that plaintiff's inability to walk more than one mile, inability to jog, and need to move slowly and hold handrail when climbing stairs did not, as a matter of law, substantially limit his ability to walk); <u>Graver v. Nat'l Eng'g Co.</u>, 1995 WL 443944, at *10-11 (N.D. Ill. July 25, 1995) (finding plaintiff's limp and pain while walking did not constitute disability); <u>Stone v. Entergy Servs., Inc.</u>, 1995 WL 368473, at *4 (E.D.La. June 20, 1995) (finding plaintiff's inability to walk briskly or climb stairs not substantial limitation on major life activity); <u>Garvin v. Potter</u>, 367 F. Supp. 2d 548, 562 (S.D. N.Y. 2005). Although Plaintiff's injury may well have been serious, the ability to lift up to 20 pounds and climb for two hours is not evidence that the injury substantially limited one of his major life activities. <u>See Baker v. Potter</u>, 294. F. Supp. 2d 33, 36 (D. D.C. 2003).

Because the Plaintiff has not shown that one of his major life activities was substantially limited at the time the Defendant allegedly caused an adverse employment action he has not established the first prong of his prima facie case of disability discrimination. <u>See Id.</u>; <u>Breen</u>, 282 F.3d at 841; <u>See also Walker v. Ashcroft</u>, 2002 WL 335530, at *1 (D.C. Cir. Jan. 25, 2002) (per curiam) (finding that the employee had not sufficiently alleged that his impairment substantially limited one or more major life activity); <u>Duncan</u>, 240 F.3d at 1115 (same). Accordingly, a court should grant the Defendant's motion for summary judgment on the disability-discrimination claim. <u>Celotex</u>, 477 U.S. at 322; <u>Greene</u>, 164 F.3d at 675.

**F.       The Defendant's Articulated Legitimate Nondiscriminatory Reasons For Its Actions Are Not Shown By The Plaintiff To Be Pretext For Discrimination.**

Even if the Court were to hold that Plaintiff has established a prima facie case, Plaintiff can not defeat summary judgment because he cannot point to any evidence that the agency's legitimate, non-discriminatory reasons for his alleged adverse actions are pre-textual. See Cones, 199 F.3d at 520-21.

As noted above, once a plaintiff establishes a prima facie case of race, sex, age, disability discrimination and retaliation, the burden shifts to the defendant to provide a non-discriminatory rationale for its actions. Id. A plaintiff must then rebut the legitimate explanation by demonstrating either that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256 (applying McDonnell Douglas in the context of discrimination, rather than retaliation, claim); accord., Cones, 199 F.3d at 520-522 (applying pretext analysis from McDonnell Douglas to Title VII retaliation claim). If a plaintiff can identify "evidence from which a jury could find that the employer's stated reasons were pretextual," it will usually "be enough to get a plaintiff's claim to a jury." George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir 2005) (internal citations and alterations omitted). Nevertheless, the defendant may still prevail on summary judgment if the facts demonstrate that the defendant "honestly and reasonably believed" the reasons proffered for the adverse employment action such that the court may decide "as a matter of law that [Defendant] possessed a good-faith belief in those reasons." Id. at 416 (emphasis in original).

34

1. **Plaintiff's makes a collateral attack on issues properly before OWCP and Arbitration forums.**
   **a. On July 22, 1998, he became aware that sick leave was put in for him rather than LWOP (Complaint ¶ 17).**

The Plaintiff requested sick leave, ratified the request on July 22, 1998 and he was paid for his sick leave. See ROI (Ex. 1, 3a, 3b & 4, p. 25; 27-29). The Plaintiff failed to bring any discrepancy on the Form 3971 to his supervisor's attention prior to signing the document.

The Plaintiff's main contention is that he had to reimburse OWCP for the $1,488.83 overpayment he received. See 1998 ROI (Ex. 2). This amounts to a collateral attack on the workers compensation proceeding. A collateral attack involves a challenge to another forum's proceeding, i.e., the grievance process, the EEO process in a separate case, the unemployment compensation process, the workers' compensation process, the tort claims process, and so forth. Plaintiff has an alternative avenue available for redress -- the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8102, et seq. FECA allows a federal employee injured during the course of employment to receive worker's compensation, and is the exclusive remedy for these injured employees. See 5 U.S.C. § 8116(c) ("The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death is exclusive . . ."); see also, Richmond v. Potter, Civ. Action No. 03-00018 (CKK), U.S. Dist. Lexis 25374, *44 (D.D.C. 2004).

In the present case, however, FECA was still very much available to Plaintiff as a remedy. Plaintiff's protestations aside, it is clear that FECA represents a comprehensive remedial scheme created by Congress. Id. at *46. While not all Title VII and Rehabilitation Act claims filed by

35

federal employees are precluded by FECA, direct challenges to compensation decisions made under FECA, as Plaintiff brings in this case, are viewed as impermissible collateral attacks of a prior unreviewable decision by the Department of Labor; and as such are statutorily barred from judicial review. See Almaguer v. White, Civ. Action No. SA-02-CA-1103 NN, 2002 U. S. Dist. Lexis 20642, *21-23 (W.D. TX 2002).[6]

Moreover, the EEOC has held that "an employee cannot use the EEO complaint process to lodge a collateral on another forum's proceeding.  The proper forum for the [Plaintiff] to have raised h[is] challenge that occurred during the processing of h[is] OWCP claim was with the Department of Labor."  Brown v. Potter, Case No. 02 C 3677, 2002 U. S. Dist. Lexis 9890, *4-5 (N.D. Il 2002), affd. 2003 U.S. App. Lexis 11161 (7th Cir. 2003).  Therefore, the Complainant's claim must fail.

---

[6]  See Meester v. Runyon, 149 F.3d 855, 857 (8th Cir. 1998) (where the court held that a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision), cert. denied, 526 U.S. 1144, 143 L. Ed. 2d 1031, 119 S. Ct. 2018 (1999). See also Stubler v. Runyon, 892 F. Supp. 228, 229-30 (W.D. Mo. 1994) (prohibiting discrimination claims based on the same work-related injury for which FECA benefits were sought), aff'd, 56 F.3d 69 (8th Cir. 1995); Alexander v. Frank, 777 F. Supp. 516, 523-24 (N.D. Tex. 1991) (granting summary judgment for the defendant on the plaintiff's disability discrimination claim because FECA benefits constitute the government's exclusive liability); and Black v. Frank, 730 F. Supp. 1087, 1090-91 (S.D. Ala. 1990) (holding that FECA benefits constitute the government's exclusive liability because awarding a remedy under the Rehabilitation Act would "irreconcilably conflict" with FECA).

**b.  Plaintiff's claim that on August 19, 1998, he received a PS Form 50 changing Plaintiff job status from Full-Time Regular to Part-time Flexible effective April 25, 1998 resulting in a change in his seniority status(Complaint ¶ 18).**

The Plaintiff's full-time regular status was changed to part-time flexible because of a settlement agreement based on the Snow Arbitration award.  See 1998 ROI (Bills Aff. E, p. 23; Ex. 9a- 9c, p. 48-50 and Counselor's Report, p. 116).  On December 1, 1998, after the Union and Postal Service agreed to amend the settlement agreement, the Plaintiff's status was restored as was his leave and pay.  Since arbitration is part of the grievance process the Plaintiff's EEO claim amounts to a collateral attack on the arbitration decision. See, Baucom v. Potter, 225 F. Supp. 2d 585, 593 (D. Md. 2002); See also, Wynn v. North American Systems, Inc., 608 F. Supp. 30 (N.D. Ohio 1984).  As argued hereinafter, the Plaintiff is unable to establish that the Postal Service's legitimate, non-discriminatory reason is pretextual, and therefore, his claim fails.

**2.  An administrative error by an employee is sufficient legitimate non discriminatory reason to overcome an inference of discrimination**.

The Defendant agrees that some of the actions might have occurred solely because of an administrative error.  See EEOC No. 100-A1-7275X  1998 ROI (Plaintiff Aff. A, p. 10). Accordingly, the Defendant submits that, although the Plaintiff believed that he was discriminated against, after reviewing the evidence presented by the Defendant, the Court should find that the Defendant has met its burden of showing that there is a legitimate nondiscriminatory reason why the Plaintiff was denied the leave request based purely on an administrative error.

37

a. <u>Plaintiff's claim that on September 9, 1999 Plaintiff's</u>
<u>request for sick leave was disapproved, changed to annual, causing</u>
<u>him to incur three hours of leave without pay (Complaint ¶ 19)</u>

a.Plaintiffis claim that on September 9, 1999, Plaintiffis request for sick leave was disapproved,

changed to annual, causing him to incur three hours of leave without paya.Plaintiff s claim that

on September 9, 1999, Plaintiff s request for sick leave was disapproved, changed to annual,

causing him to incur three hours of leave without pay          The Plaintiff's sick leave

request for 3 hours was disapproved because he had no medical information on file.  <u>See</u> 1998

ROI (Grier Aff. B, p.14).   In his affidavit, the Plaintiff admits that Ms. Grier may have been

referring to the wrong complaint number.  <u>See</u> 1998 ROI (Plaintiff Aff. A, p. 10). The Agency's

legitimate mistake or unintentional error does not prove by a preponderance of the evidence that

the actions were discriminatory. Furthermore, the Plaintiff's request was changed to annual leave,

thereby allowing him to get paid for his time off.  The Plaintiff has failed to show that Ms. Grier

was aware of the Plaintiff's annual leave balance.  There is no other evidence or basis upon which

a finding of discrimination could be supported.  Therefore, Plaintiff's claim fails.


b. <u>Plaintiff's claim that on an unspecified date, an Injury</u>
<u>Compensation Specialist 'purposefully' provided inaccurate</u>
<u>information on handling his claim that encouraged retaliatory</u>
<u>responses from management (Complaint ¶ 17).</u>


On June 10, 1999, the Plaintiff's OWCP claim number 25-052977 had been denied by

OWCP.  <u>See</u> 1998 ROI (Ex. 12).  Ms. Grier, as she does with all denied claims, informed the

38

operations managers that Mr. Diggs' OWCP claim had been denied. <u>See</u> 1998 ROI (Grier Aff. B, p. 14). Upon notification that the Plaintiff's OWCP claim had been denied, Mr. Gramblin believed that the Plaintiff was able to perform his regular duties. <u>See</u> 1998 ROI (Gramblin Aff. D, p. 20). Mr. Gramblin did not know that the Plaintiff had more than one OWCP claim and the Plaintiff did not immediately inform Mr. Gramblin. <u>Id.</u>

After approximately 2 days, the Plaintiff returned with documentation to show that he had more than one claim, and that only his 25-0529977 claim for stress had been denied, not his 25-0514475 back injury claim. <u>See</u> 1998 ROI (Plaintiff Aff. A, p. 11). The Plaintiff filed a grievance for his lost time and was compensated for 19.42 hours. <u>See</u> 1998 ROI (Ex. 16, 17 and 18; <u>see also</u>, Counselor's Report, p. 133 (last 10 lines)). He returned to his limited duty job. <u>See</u>, 1998 ROI (Gramblin Aff. D). Again, this is a failure to communicate between the Plaintiff and the Postal Service and this amounts to nothing more than a legitimate or unintentional error. Accordingly, the Plaintiff's claim for retaliation must fail.

Defendant explained how the error occurred. While such an explanation is perhaps not the traditional "business reason," it is sufficient to negate the rather weak inference of discriminatory intent raised by Plaintiff's prima facie showing. <u>Grimes v. District of Columbia</u>, 630 F. Supp. 1065, 1070 (D. D.C. 1986). Moreover, the Plaintiff has presented no evidence that would suggest that this legitimate nondiscriminatory reason is pretextual. In fact, the Plaintiff has presented no evidence at all. Where, as here, the Plaintiff fails to present any evidence from which a trier of fact could possibly infer that the U. S. Postal Service's asserted nondiscriminatory reasons for its

39

actions are false or pretextual, summary judgment is appropriate. Meiri v. Dacon, 759 F.2d 989, 997-98 (2d Cir.), cert. denied, 474 U.S. 829, (1985); Stevens v. District of Columbia, 1994 WL 377271, at *3 (D.D.C.1994); Plummer v. Tisch, 1989 WL 141388 at *3 (D.D.C. 1989).

　　As noted above, Postal officials admit to having made errors, which were later corrected. See EEOC Case No. 100-A1-7572X 1998 ; ROI (Affs. B & D, p.13;20).   As Plaintiff presents no facts calling the Postal Service's explanation into question, the allegations of discrimination are unavailing to him.   See Gilbert v. Babbitt, Civil Action No. 92-1124 (NHJ) (U.S. Dist. Lexis 15467, at *16 (D.D.C. 1993)). Therefore, the Plaintiff's evidence in this case falls short of proving pretext either directly or indirectly. At most, the Plaintiff has succeeded in demonstrating **the errors caused some** confusion.

　　Title VII does not protect the Plaintiff, or any employee for that matter, from an employer's poor or erroneous judgment.  The statute does not require the employer to have good cause for its decisions. The employer may take action against an employee for a good reason, a bad reason a reason based on erroneous facts or for no reason at all, as long as its action is not for a discriminatory reason. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

　　For the Plaintiff to satisfy his Title VII burden of proof, it is simply not enough for him to

40

show that the Defendant did a particularly inept job of denying leave or even that the Defendant did not follow the procedures.  See id. (reversing judgment for plaintiff because, although he may have shown that he was fired for violating a rule that he did not violate, "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules"); Craig v. Department of Health Educ. & Welfare, 508 F. Supp. 1055, 1058 (W.D. Mo. 1981) (even if defendant failed to follow procedural aspects of its own regulations and personnel guidelines, Title VII plaintiff could not prevail because she did not show that these failures were racially motivated).

At bottom, the problem with the Plaintiff's claim is that he has failed to establish any nexus between the shortcomings of a management official and the defendant's alleged intentional discrimination on the basis of his race, sex, age, disability or retaliation discrimination. Although supervisors may have erred, that error alone does not warrant a finding of discrimination. Thomas v. Barry, Civ. Action No. 83-1107, 1984 U.S. Dist. Lexis 18730 *5 (D.D.C. 1984).  Accordingly, this Court should grant defendant's motion to dismiss or in the alternative for summary judgment on the Plaintiff's race, sex, age, disability and retaliation discrimination claims.

**3.    The Plaintiff is unable to show that the Defendant's legitimate, non-discriminatory reasons for not assigning overtime to the Return to Sender unit are pretextual.**

Return to Sender mail is mail in which a delivery attempt had been made, but for some reason, the mail needs to be returned to the sender as undeliverable. See 2000 ROI (Boston Aff. B, p.11). Return to Sender mail has a low priority and does not warrant paying employees

41

premium overtime to process it.  Id.  Absent evidence of discrimination, the Court should not second guess such management decisions. Burdine, 450 U.S. at 259.  The Plaintiff must show that the reason proffered by the employer was false and that discrimination was the real reason for the action.  St. Mary's Honor Center, 509 U.S. at 515.  The record does not contain evidence sufficient for the Plaintiff to establish that the Defendant's legitimate, non-discriminatory reasons are pretextual and therefore, his Complaint fails.

### G.        Intentional And Negligent Tort Claims Are Preempted.

Plaintiff has alleged intentional and negligent tort claims for emotional distress.  See Complaint, Counts V & VI.  Tort claims arising out of employment disputes in the Postal Service are preempted by chapters 10 and 12 of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 1001-1011, 1201-1209, which, by incorporating Chapter 75 of the Civil Service Reform Act, 5 U.S.C. § 7501-7543, establish a comprehensive statutory scheme governing personnel actions within the Postal Service.  See, American Postal Workers Union v. United States Postal Service, 940 F.2d 704, 708-09 (D.C. Cir. 1991); Kroll v. United States, 832 F. Supp. 199, 202-03 (E.D. Mich. 1993), aff'd, 58 F.3d 1087 (6th Cir. 1995).

Moreover, Title VII provides the "exclusive judicial remedy for claims of discrimination in federal employment." Brown v. General Services Administration, 425 U.S. 820, 835 (1976) Because Plaintiff's tort claims are based on the same factual allegations as his discrimination claims, his tort claims are consequently preempted by Title VII. See, Baird v. Haith, 724 F. Supp.

42

367, 375-77 (D. Md. 1988).  See also Rochon v. Dillon, 713 F. Supp. 1167, 1172 (N.D. Ill. 1989) (holding that claims grounded in supervisory actions taken under color of federal law were preempted by Title VII).

Even if Plaintiff's tort claims were not preempted, they would be subject to dismissal for failure to comply with the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2689.  The FTCA requires the filing of a claim with the agency involved within two years of the alleged injury.  See 28 U.S.C. §§ 2675(a), 2401(b).  Filing a claim with the agency is a jurisdictional requirement for civil actions under the FTCA.  Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986). Plaintiff has not alleged that he has filed a tort claim with the Postal Service.  Therefore, his claim must be dismissed.  See Baird, 724 F. Supp. at 377.

### H. Plaintiff Has Had an Opportunity for Discovery.

In paragraph 10 of his Amended Complaint, Plaintiff claims "throughout the admistrative process, the Plaintiff was not allowed to engage in any discovery."  The EEOC Acknowledgment Order, Order for Consolidation for the two EEOC cases and a request for an extension of discovery by the Agency, demonstrate that discovery opportunities were afforded to Plaintiff. See ex.

However, the Plaintiff may be claiming that he was not granted discovery for a breach of the settlement agreement claim. However, breach of settlement does not afford the opportunity for discovery to the parties under EEOC regulations. The process is that the employee notifies the

43

agency of an alleged breach.  The agency issues a determination decision advising if there was or was not a breach and the employee must be provided with the right to appeal the agency's breach determination decision to OFO.  OFO issues a decision. It did so here on April 27, 2005, which denied the Complainant's claim of breach of the agreement by the Agency. The applicable regs for breaches can be found at 29 C.F.R. 1614.504.

**III.    CONCLUSION**

The record, considered as a whole, precludes a rational trier of fact from finding that Plaintiff was discriminated against, and consequently, the Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
R. CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530

44

(202) 514-7238;(202) 514-8780 (Facsimile)
Benton.Peterson@usdoj.gov

45