# UNITED STATES DISTRICT COURT

# District of the District of Columbia

| | |
|---|---|
| Keith B. Diggs, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 05-1112(EGS) |
| | ) |
| JOHN E. POTTER, | ) |
| POSTMASTER GENERAL, | ) March 10, 2006 |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S 56(f) REQUEST**

## I.   INTRODUCTION

The Plaintiff alleges that he was discriminated against on the basis of race (black), sex (male), age (DOB 1956), retaliation (prior EEO activity) and physical disability (back injury) when:

On July 22, 1998, he became aware that sick leave was put in for him rather than LWOP which affected his CA-7 claim; and on August 19, 1998, he received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible, effective April 25, 1998, resulting in a change in his seniority status.

The Plaintiff alleges he was discriminated against based on retaliation (prior EEO activity) and physical disability (back injury) when:

On September 9, 1999, his request for sick leave was disapproved, changed to annual, causing him to incur three hours of leave without pay; and on an unspecified date, Injury Compensation Specialist provided inaccurate

information on handling his claim that encouraged retaliatory responses from management.

The Plaintiff has launched an impermissible collateral attack on the workers compensation and the arbitration award processes and is unable to show that he is aggrieved. Furthermore, the Plaintiff in his opposition is unable to show that he is disabled as defined by the Rehabilitation Act or to establish a prima facie case of discrimination based on sex, race, age, disability or retaliation. Even if the Plaintiff could establish a prima facie case, he is unable to show that the Postal Service's legitimate, non-discriminatory reasons are pretextual. For these reasons the motion for summary judgment should be granted.

## II. ARGUMENT AND AUTHORITIES

### A. Summary Judgment Should Be Granted From The Administrative Record Without Discovery.

Plaintiff has made no attempt to refute Defendant's showing that his Complaint should be dismissed for his failure to show any disputed material facts. Plaintiff's only response to Defendant on these points was a suggestion that the Plaintiff would like to take discovery. See Pltf.'s Opp., at p. 7. Specifically, Plaintiff relied on Rule 56(f) of the Federal Rules of Civil Procedure, which permits a court to deny a motion for summary judgment and order additional discovery if "the party opposing the motion . . . cannot . . . present by affidavit facts essential to justify the party's opposition . . . ." Fed. R. Civ. Pro. 56(f). Defendant has demonstrated that no material facts are genuinely disputed. Plaintiff has not, however, identified any material facts that would be ascertainable in discovery that are not ascertainable now and that are genuinely in

dispute. Indeed, but for Plaintiff's blanket assertion that discovery is needed, plaintiff does not deny or dispute any material fact defendant has submitted. Plaintiff merely has made conclusory allegations that discovery would likely produce material disputed facts. Plaintiff sought discovery relating to his claims by stating he is not able to present opposing facts to contradict Defendant's assertions because Plaintiff has not been able to engage in any discovery. See Plaintiff's Opposition at 3; Plaintiff's Rule 56(f) Affidavit ¶ 3. But, that is simply not true. During the administrative phase of this case, Plaintiff (represented by counsel) had ample opportunity to conduct discovery, including 30 interrogatories, 30 requests for admissions, 30 document requests and depositions. See, Exhs. 1 and 2. As pointed out in Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, the EEOC Acknowledgment Order, Order for Consolidation of the two EEOC cases and a request for an extension of discovery by the Agency, demonstrate that discovery has been afforded to Plaintiff but failed to follow through with obtaining discovery. See Exhs. 1 and 2. Plaintiff's Opposition does not refute, let alone engage these documents nor the arguments in Defendant's Motion concerning this issue. By ignoring this point, Plaintiff effectively concedes it.

Plaintiff also restated several allegations from his Complaint (See Pltf.'s Opp., p 12), but he did not offer a reasonable basis to suggest that discovery would show either that Defendant made errors too obvious to be unintentional or that the stated reasons for Defendant's actions are not believable. See Fishbach v. District of Columbia, Dept. of Corrections, 86 F.3d 1180, 1182 (D.C. Cir. 1996) (to show pretext, issue is not correctness of employer's reasons but whether it honestly believes them). Even though Plaintiff suggested that Defendant's explanations were false, he failed to describe what

3

new facts he believed could be obtained by discovery to support his theory. See Carpenter v. Federal National Mortgage Assn, 174 F.3d 231, 237 (D.C. Cir. 1999); Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (desire to "test" affiants' testimony does not justify Rule 56(f) discovery). Accordingly, the District Court will not abuse its discretion in denying Plaintiff's discovery request. See Exxon Corp., 663 F.2d at 126 (Rule 56(f) ruling reviewed for abuse of discretion).

Moreover, the affidavits presented in the Report of Investigation (ROI) are sufficiently detailed in setting forth the undisputed material facts. The affidavits adequately explain the legitimate, non-discriminatory reasons for the actions taken. See Broaddrick v The Executive Office of the President, 139 F. Supp. 2d 55, 64 (D.D.C. 2001); See also, Goland v. CIA, 607 F.2d 339, 352-56 (D.C. Cir. 1979) (affirming district court's grant of summary judgment without discovery where agency affidavits were sufficient), cert. denied, 445 U.S. 927 (1980); Master v. F.B.I., 926 F. Supp. 193, 195-97 (D.D.C.1996) (denying discovery on search issue where court determined agency's search for documents was adequate), aff'd. mem, 124 F.3d 1309 (D.C. Cir. 1997). Thus, even if the Plaintiff had established a prima facie case, he has failed to show any evidence that Defendant's legitimate business reasons for its actions were not worthy of credence.  Therefore, Plaintiff's urging at this late hour that the administrative record was inadequately developed for summary judgment should be rejected.  See Oliver v. Digital Equipment Corp,846 F.2d 103 109-10 (1st Cir. 1988).

Although Plaintiff reminds the Court that discrimination cases are not as likely decided without a trial, the Court should find that the essential facts material to a

disposition of the case are to be found in the extensive administrative record, and stand uncontradicted by any evidence in the record here. See Matzo v. Postmaster General, 685 F. Supp. 260, 261 (D.D.C. 1987).  Defendant has moved for summary judgment relying on fact from the administrative record of the investigation of Plaintiff's Equal Employment Opportunity (EEO) claim. Defendant contends that Plaintiff cannot meet his burden of presenting a prima facie case of discrimination, that Defendant has demonstrated an ability to meet his burden of establishing legitimate, nondiscriminatory reasons for defendant's actions, and that Plaintiff cannot meet his burden of showing that the reasons given are pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); and King v. Dept. of Interior, 785 F. Supp. 206, 207 (D.D.C. 1992).

By meeting its burden of production to show a legitimate reason for each of the actions taken with regard to the Plaintiff, defendant has shifted the burden back to Plaintiff to prove pretext. Plaintiff has not shown that he can meet that burden. Accordingly, summary judgment in Defendant's favor is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323.

1. Plaintiff has not justified further discovery under Rule 56(f).

Rule 56(f) of the Federal Rules of Civil Procedure allows a party to seek further discovery before a court grants a motion for summary judgment only if affidavits of a party show that the party cannot present facts essential to justify the party's opposition. Fed. R. Civ. P. 56(f).  Vague and conclusory statements about facts a party wishes to obtain are not sufficient to justify further discovery under 56(f).  Carpenter v. Federal Nat'l Mortgage Assoc., 174 F.3d 231, 237 (D.C. Cir. 1999), cert. denied, 120 S. Ct. 184

(1999); Strang v. United Arms Control and Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989). Plaintiff's submission does not satisfy Rule 56(f) because he does no more than submit vague statements about a need to question every person who may have had some peripheral involvement in his retaliation and discrimination case without identifying any reason to believe he will obtain any information other than what is fully developed in the administrative record.

Furthermore Plaintiff makes no allegation that he needs discovery because the administrative investigation of his EEO complaints resulted in an administrative record that is slanted or somehow unreliable. However, contrary to his assertions, Plaintiff and his former counsel were actively involved in determining the scope, direction and depth of that EEO investigation. Throughout the investigation, Plaintiff had the opportunity to supplement the investigative record, and Plaintiff failed repeatedly to take advantage of that opportunity.

While Plaintiff is entitled to a de novo proceeding in this Court on his discrimination complaint, the administrative record is sufficiently complete in this case to allow this Court to enter summary judgment in favor of the Defendant. See Weahkee v. Perry, 587 F.2d 1256, 1263 (D.C. Cir. 1978). The de novo proceedings need not duplicate the administrative record already in existence. See Hackley v. Roudebush, 520 F.2d 108, 150 (D.C. Cir. 1975). The principle that should guide the Court's analysis of Title VII cases is that there should "be a fresh determination of the facts and issues by the district court." Weahkee, 587 F.2d at 1263. The papers that Defendant has filed in support of its motion for summary judgment demonstrate the adequacy of the administrative record.

Additionally, a federal employee's de novo Title VII claim in federal court does **not** necessarily mean that the employee is entitled to **discovery** de novo.[1] It is well settled that Rule 56 does not require that any discovery take place before a motion for summary judgment can be granted. See 11 Moore's Federal Practice 3d. § 56.10[8][a], at 56-80.1. The Rule merely requires that the parties have been given a reasonable opportunity to make their record complete before the court grants a motion for summary judgment. See id.

Rule 56(f) is intended to protect against "an improvident or premature grant of summary judgment." See 10B Wright & Miller, Federal Practice & Procedure, § 2740, at 402 (1998). However, the protections of the Rule are not automatic. Rather, if a party believes that he cannot oppose a summary judgment motion without first conducting additional discovery, he must "articulate a plausible basis for the belief that discoverable materials exist which would raise a trial worthy issue." Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991).

The courts have recognized that deferring a ruling on a motion for summary judgment is not appropriate if an evidentiary record already exists and/or if the non-movant has failed to diligently pursue discovery opportunities in the past. See City of Rome v. Glanton, 958 F.Supp. 1026, 1039 (E.D.Pa.), aff'd without op., 133 F.3d 909 (3d

---

[1] Contrary to Plaintiff's suggestion, Chandler v. Roudebush, 425 U.S. 840 (1976), does not hold that a Title VII plaintiff has the right to discovery de novo. That decision merely provides that a plaintiff has "the right to file a 'civil action' following adverse agency action." See In re Watts, No. 95-5068, 1995 WL 418628 (D.C. Cir. June 16, 1995) (per curiam) (rejecting the contention that Chandler should be interpreted to entitle a Title VII plaintiff to "the right to a full trial with discovery.").

Cir. 1997) (court denied request for discovery, finding that movant had "more than adequate time for discovery" and a large record had already been produced); see also Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1997) (district court does not abuse its discretion by denying request for further discovery under Rule 56(f) if the requesting party has failed to pursue discovery diligently in past); Mobley v. City of Atlantic City Police Dep't, 89 F.Supp.2d 533, 537 (D.N.J. 1999) (district court denied plaintiff's Rule 56(f) motion because plaintiff had failed to take advantage of prior opportunities to engage in discovery); Nicholson v. Doe, 185 F.R.D. 134, 137 (N.D.N.Y. 1999) (same). As one court has explained, the courts need not aid parties who "have occasioned their own predicament through sloth." Canizzarro v. Neiman Marcus, Inc., 979 F.Supp. 465, 471-72 (N.D. Tex. 1997).

      2. Plaintiff Already Has Had Opportunities To Conduct Discovery And A Voluminous Evidentiary Record Already Exists.

Here, there is no reason why the Court cannot rule on Defendant's summary judgment motion. Plaintiff has had ample opportunity to conduct discovery regarding the issues in this case. Specifically, during the administrative proceedings in this case, Plaintiff was granted leave to serve discovery requests on the Defendant to include requests for interrogatories, requests for admissions of fact, requests for production of documents, and requests for depositions. See Exhs. 1 and 2. Although he was represented by the same counsel at the time, Plaintiff failed to file any timely discovery requests. See id.

Every named witness that plaintiff now seeks to depose in his 56(f) affidavit, except for Lisa Saunders, has already provided testimony in this matter. See 1998 ROI

p.3 [docket # 12]. In short, the evidentiary record is complete with regard to most, if not all, of the issues in this case. Defendant respectfully submits that it would be a waste of time and resources to permit Plaintiff to conduct discovery yet again with respect to these issues. Moreover, to the extent that there are certain issues with respect to which Plaintiff has not conducted discovery, that is a result of his own lack of diligence. As indicated above, Plaintiff had ample opportunity to conduct discovery at the administrative level but simply chose not to do so. "Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996); see also Nidds, 113 F.3d at 921; Mobley, 89 F.Supp.2d at 537; Nicholson, 185 F.R.D. at 137.

### B.  Plaintiff Has Not Met His Burden To Show A Prima Facie Where He Has Not Shown An Adverse Employment Action.

To establish an adverse personnel action in the absence of diminution of pay or benefits, Plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D. C. Cir. 1999). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Stewart v. Lewis, 275 F.3d 1126, 1134-35 (D.C. Cir. 2002) ( citing Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (citation omitted); See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

9

responsibilities, or a decision causing a significant change in benefits.").

> 1. <u>On July 22, 1998, Plaintiff became aware that sick leave was put in for him rather than LWOP which allegedly affected his CA-7 claim.</u>

As previously argued in the Defendant's Motion for Summary Judgment, the Plaintiff telephoned in a request for sick leave on July 5, 1998.  <u>See</u> ROI (Ex. 1).  His supervisor marked the sick leave box and on July 22, 1998, when he returned from leave, he ratified the Form 3971 Request for Leave with his signature.  <u>Id</u>.  The Plaintiff did not suffer a loss because he was paid for 40 hours sick leave.  <u>See</u> ROI (Ex. 3b).  The Plaintiff had simply been paid by the OWCP for the same time period.  Therefore, OWCP sent him a notice of overpayment and the Plaintiff was required to return the overpayment.  <u>See</u> ROI (Ex. 2).  The Plaintiff has offered nothing in his Opposition to contradict this material fact.

> 2. <u>On August 19, 1998, Plaintiff received a PS Form 50 changing his job status from Full-Time Regular to Part-time Flexible effective April 25, 1998 resulting in a change in his seniority status.</u>

The Plaintiff's status was changed to part-time flexible on July 24, 1998 due to a July 18, 1998 settlement agreement between the Union and Postal Service.  <u>See</u> ROI (Counselor's Report p. 116).  Then, the Union and Postal Service amended the July 18, 1998 settlement agreement to restore full-time status to employees that were converted to part-time flexibles.  On December 1, 1998, the Plaintiff's status was changed back to full-time.  The Plaintiff's leave and pay was also restored.  <u>See</u> ROI (Counselor's Report, p. 116).  Again, the Plaintiff has not shown that he suffered a loss or harm to a term,

condition or privilege of employment for which there is a remedy.

> 3. <u>On an unspecified date, Injury Compensation Specialist provided inaccurate information on handling his claim that encouraged retaliatory responses from management.</u>

The Plaintiff is unable to show that he suffered a loss or harm to a term, condition, or privilege of employment or that there is a remedy available when he was sent home for refusing to perform his regular duties.  Approximately 2 days later, the Plaintiff notified his supervisor of an active OWCP claim that was still valid, which was different than the one that his supervisor was aware of that had been dismissed.  <u>See</u> ROI (Gramblin Affidavit D). The Plaintiff was returned to duty and received 19.42 hours of pay for the time he was away from work. <u>See</u> ROI (Ex. 16, 17).  Therefore, there is no remedy remaining for the Plaintiff.  Plaintiff has not challenged management's explanation of this action.

Moreover, even if the Court accepts as true Plaintiff's allegation that the Postal Service attempted to block his receiving full benefits and seniority, Title VII does not provide relief for victims of attempted retaliation. <u>See</u> <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (the District Court found in holding plaintiff's erroneous performance rating -- with its concomitant effect upon her bonus -- was not an adverse employment action because management corrected the evaluation and paid the proper bonus before plaintiff brought her suit); <u>Russell v. Principi</u>, 257 F.3d 815, 819 (D.C. Cir. 2001).  Here, the Plaintiff suffered no adverse employment action as a result of any alleged interference by management officials.

### C. Plaintiff Has Failed To Exhaust A Claim Of Retaliation.

The Defendant has argued that the Plaintiff failed to exhaust his administrative remedies by not contacting an EEOC counselor within 45 days after each alleged discriminatory event occurred. The Plaintiff, however, argues that because the Defendant's actions constitute retaliation the exhaustion requirement does not apply to him. Pl.'s Opp'n at 9. For authority the Plaintiff cites Powell v. Castenda, 399 F. Supp. 2d 1, 9 (D.D.C 2005). This case, however, actually undermines the Plaintiff's argument. "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts constituting the claim are part of the same unlawful employment practice and at least one act falls within the time period." Powell, 399 F. Supp. 2d at 8 (citing, AMTRAK v. Morgan, 536 U.S. (2002). The court in Morgan distinguished discrete acts of discrimination from hostile work environments in the following manner:

> "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' . . . The 'unlawful employment practice' [in hostile work environment claims] . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Id. at 114-15; See also Anderson v. Zubieta, 180 F.3d 329, 337 (D.C. Cir. 1999) (holding that where "'discrimination is not limited to isolated incidents, but pervades a series or pattern of events which continue to within [45] days of the filing of the charge .

. ., the filing is timely . . . regardless of when the first discriminatory incident occurred.'") (alteration in original) (quoting Laffey v. NW. Airlines, 567 F.2d 429, 473 (D.C. Cir. 1976)).

In contradistinction, the Plaintiff's complaint contains an untimely complained of discrete act allegedly taken against him by the Defendant. See Complaint, ¶¶ 27-30. His claim, moreover, includes the very type of discrete act, i.e., his termination, which is identified in Morgan as a separate, actionable, unlawful employment practice. Furthermore, "the theory of continuing violation must be guardedly employed because within it are the seeds of the destruction of statutes of limitations in Title VII cases." Childers v. Slater, 44 F. Supp. 2d 8, 18 (D.D.C. 1999) (quoting Cones v. Shalala, 945 F. Supp. 342, 346 (D.D.C. 1996)). "To conveniently cast all the allegations in this complaint as a related series of discriminatory or retaliatory actions would permit this plaintiff to bypass the Title VII administrative process." Childers, 44 F. Supp. 2d at 18. The court should accordingly dismiss as untimely all allegations stemming from discrete actions for which no complaint was filed within 45 days after they occurred.

### D. Plaintiff Has Not Established A Claim Of Rehabilitation Act Discrimination.

To satisfy the first prong of the prima facie case for disability discrimination, the plaintiff must show that he is an individual with a disability. Breen, 282 F.3d at 841. Under the Rehabilitation Act a disability consists of "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." See also 42 U.S.C. § 12102(2)(A); Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d

1110, 1114 (D.C. Cir. 2001). As the Supreme Court has noted, "merely having an impairment does not make one disabled for purposes of the ADA, [c]laimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). Moreover, "a claimant must further show that the limitation on the major life activity is 'substantial.'" Id. (citing 42 U.S.C. § 12102(2)(A)).

Since the Plaintiff can lift up to 20 pounds and perform limited climbing of no more than two hours he was not substantially limited in a major life activity. See Baker v. Potter, 294 F. Supp. 2d, 33, 46 (D. D. C. 2003) ("Plaintiff was cleared to lift up to 20 pounds…[a]lthough the injury may well have been serious the plaintiff provides no evidence that the injury limited one of her major life activities…."); Rogers v. Int'l. Marine Terminals, Inc. 87 F.3d 755, 758 (5th Cir. 1996) ("Climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."). See, e.g., Kelly v. Drexel Univ., 94 F.3d 102, 106 (3rd. Cir. 1996) (affirming district court's holding that plaintiff's inability to walk more than one mile, inability to jog, and need to move slowly and hold handrail when climbing stairs did not, as a matter of law, substantially limit his ability to walk); Graver v. Nat'l Eng'g Co., 1995 WL 443944, at *10-11 (N.D. Ill. July 25, 1995) (finding plaintiff's limp and pain while walking did not constitute disability); Stone v. Entergy Servs., Inc., 1995 WL 368473, at *4 (E.D.La. 1995) (finding plaintiff's inability to walk briskly or climb stairs not substantial limitation on major life activity). Garvin v. Potter, 367 F. Supp. 2d 548, 562 (S.D. N.Y. 2005). Although Plaintiff's injury may well have been serious, the ability to lift up to 20 pounds and climb for two hours is not evidence that the injury substantially limited one

of his major life activities. See Baker v. Potter, 294. F. Supp. 2d 33, 36 (D. D.C. 2003).

Plaintiff's only response is his reference to Lester v. Nastios, 290 F. Supp. 2d 11, 24 (D.D.C. 2003). Plaintiff disingenuously quotes a portion of that case, from which he seems to argue that if he established that is impairment is permanent or long-term that he shows that he is limited in the major life activity of "working." However, the court in Lester made no such ruling and indeed the completion of the sentence quoted by the Plaintiff regarding the permanent or long-term impairment is that it must "substantially limit a major life activity…." to show that an individual is disabled. See Id.

Because the Plaintiff has not shown that one of his major life activities was substantially limited at the time the Defendant allegedly caused an adverse employment action he has not established the first prong of his prima facie case of disability discrimination. See Id.; Breen, 282 F.3d at 841; See also Walker v. Ashcroft, 2002 WL 335530, at *1 (D.C. Cir. 2002) (per curiam) (finding that the employee had not sufficiently alleged that his impairment substantially limited one or more major life activity); Duncan, 240 F.3d at 1115 (same). Accordingly, a court should grant the defendant's motion for summary judgment on the disability-discrimination claim. Celotex, 477 U.S. at 322; Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1998).

**E.     Plaintiff Has Not Established A Claim Of Disparate Treatment By Showing He Is Similarly Situated To His Alleged Comparators.**

Plaintiff has the initial burden of proving a prima facie case of discrimination. Id. at 802. To do so, plaintiff must establish: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. Brown v. Brody, 199 F.3d 446, 452 (D.C.

15

Cir. 1999).

Plaintiff meets some of the first two elements of a prima facie discrimination claim: as a male African-American and over age forty, he is a member of protected classes. Plaintiff's claims fail, however, because he cannot establish some claims for the second element and none of the claims for the third prima facie element: that the unfavorable action gives rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135,145 (D.C. Cir. 2002). While multiple methods exist to satisfy this element, See George v. Leavitt, 407 F.3d 405, 412-413 (D.C. Cir. 2005) (describing various allegations that give rise to inference of discrimination), Plaintiff asserts only a "disparate treatment" claim, i.e., that the agency discriminated against him by treating him differently from "similarly situated employees" who are not part of the protected class). Mack v. Strauss, 134 F. Supp. 2d 103, 114 (D.D.C. 2001); See also Brown, 199 F.3d at 452; Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1150 (D.C. Cir. 2004).

In reviewing the law, to be "similarly situated" for purposes of Title VII, a plaintiff must show that "all of the relevant aspects of h[is] employment situation were nearly identical'" to the comparable employee. Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)). Plaintiff argues only that he can merely plead that there are individuals similarly situated to him, which he has done. Pl.'s Opp'n at 11. However, unless the Plaintiff can point to evidence in the record of another employee whose conduct and conditions of employment was sufficiently "similarly situated in all material respects . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination," a disparate treatment claim under Title VII cannot

16

succeed. McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).  Moreover, to be considered similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ball v. Tanque, 133 F. Supp. 2d 84, 88 (D. D.C. 2001); Phillips v. Holladay Property Servs., 937 F. Supp. 32, 37 (D. D.C. 1996), aff'd without op., 1997 U.S. App. Lexis 19033 (D. C. Cir 1997); See also Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must . . . demonstrate that all of the relevant aspects of her employment situation were nearly identical to those" of the comparators).

As is readily apparent from Plaintiff's allegations (See Complaint ¶¶ 19-26), he has failed to show that "'all of the relevant aspects of' [his] employment situation were 'nearly identical' to those of the [employees] to whom [he] compared [him]self. Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997) " (citations omitted); King v. Georgetown Univ. Hosp., 9 F. Supp. 2d 4, 7 (D.D.C. 1998).  Plaintiff has not identified any comparators, except in the most ambiguous terms, which fails to show that his comparators were similarly situated to him.

### F.    Plaintiff Has Not Made A Prima Facie Case For A Hostile Work Environment Claim.

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21,

17

(1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, (1986). Such an environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting Meritor, 477 U.S. at 65, 67). On the other hand, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 21. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. Id. at 23; Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). In considering the totality of the circumstances, however, the court is mindful that everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals. Bryant v. Brownlee, 265 F. Supp. 2d. 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)).

    The Plaintiff must allege a series of events, which rise to the level of creating serious and pervasive work environment, such that it interferes with the Plaintiff's work

performance.  However, the Plaintiff simply restates his prior allegations, which have been contradicted by the evidence of the record.  See Pl.'s Opp'n. at 12.  Plaintiff claims he was docked pay, but it has been corrected.  See ROI (Gramblin Aff. D; Ex 16, 17 & 18).

He further claims that management required him to provide medical documentation to support his absence.  See Complaint ¶ 29.  His denial of overtime has been shown to lack credibility with comparators since identified comparators were not in the same facility and subject to the same supervisor.  See ROI (Plaintiff's Aff. A; Ex. 7b, CBA Article 8.5).  Of course, the AWOL and termination allegations are discrete acts that rise to the level of an adverse employment action, but those discrete acts were not timely appealed and appear to have been addressed in another complaint that has been resolved. See Defendant's Motion for Summary Judgment, Attachment 3. After Plaintiff's leave was changed from sick leave to annual leave it was later changed to Leave Without Pay because he did not have sufficient annual leave to cover his absences.  See ROI (T. Grier Aff. B)  All of these are personnel issues and as the Court has stated it does not assume the role of a personnel office in discrimination cases. See Byrant, 265 F. Supp. 2d at 63.

### III.    CONCLUSION

All claims made by Plaintiff are appropriate for dismissal or for summary judgment.  There is no genuine issue of material fact with regard to Defendant's

non-discriminatory personnel actions and there is no evidence of pretext to rebut Defendant's articulated legitimate non-discriminatory reasons.  Consequently, Defendant should be granted summary judgment on all counts. In the alternative, Plaintiff's complaint should be dismissed for failure to state a claim on which relief may be granted.

        Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C.  20530
(202) 514-7238;(202) 514-8780 (Facsimile)
Benton.Peterson@usdoj.gov